## FARNHAM v. HOTCHKISS.

### December, 1865.

The question whether a party had title-to certain property, is, as an entire question, a question of fact, although its solution may depend on questions of law.* If an appellant would have the question reviewed in this court he must have the case so settled that the findings shall state the facts which raise the questions of law involved, and the conclusions of the court or referee thereon.†

------

* Compare Fielden v. Lahens, p. 111 of this vol.

† See as to mode of so doing, Leffler v. Field, 47 N. Y. 407 ; and further decision in 42 How. Pr. 420.

Farnham *v.* Hotchkiss.

A breach of the covenant of seizin, like a breach of a covenant of war-
ranty, is not, without eviction or disturbance, a defense to an action to
foreclose a purchase money mortgage.*

Horatio N. Farnham brought this action in the supreme
court against Wheeler Hotchkiss and Sterry Y. Peterson, to
foreclose a mortgage executed by the defendant Hotchkiss, to
one Thomas J. L. Tyler, dated April 21, 1855, to secure the
payment of two thousand one hundred dollars, and interest,
the purchase money for certain lands and mill and water priv-
ileges in the town of Hanover, county of Chautauqua, on Cat-
taraugus creek, and certain personal property. The mortgaged
premises were conveyed by Tyler to Hotchkiss by deed, with
covenants of warranty and seizin, dated the same day as the
mortgage. The sum of five hundred dollars was indorsed upon
the bond which accompanied the mortgage, as of the day it
bore date, being a deduction from the purchase money in
consideration of the loss of a part of the personal property, con-
sisting of logs, &c., and an injury which occurred to the dam
intermediate the time of the agreement to purchase and the
time of executing the deed. The mortgage had been assigned
by Tyler to Farnham, the plaintiff.

The defense relied upon was a failure of title and a breach of
the covenants of the deed in respect to the race way through
which the water was conducted to the mill.

The proof showed that the defendant had entered upon the
possession and enjoyment of the mortgaged premises, and was
so in possession during the pendency of the action. The ref-
eree to whom the trial of the action was referred, made a report
in favor of the plaintiff, which set forth the facts concisely, but
not the documents put in evidence. It also stated the referee's
conclusions of law. The case and exceptions contained the tes-
timony and documentary evidence at length. Upon the report
judgment was entered.

*The supreme court,* in an opinion by GROVER J., held, that,
as there had been no eviction or disturbance of the possession

* Compare York *v.* Allen, 36 *N. Y.* 104; and White *v.* Lester, reported
in this series.

of defendant, and no fraud on the sale was shown, the failure of title was no defense to a foreclosure, and the liability for deficiency did not alter the case. Citing Edwards *v.* Bodine, 26 *Wend.* 109, and cases there cited.

The defendant appealed to this court.

*John H. Reynolds*, for defendant, appellant.

*Chauncey Tucker*, for plaintiff, respondent.

DENIO, Ch. J.—The decree of foreclosure sought to be obtained by the plaintiff in this action, was resisted on the allegation that the title of the mortgaged premises for the purchase price of which, upon a sale from the plaintiff's assignor to the defendant, the bond and mortgage were given, had failed. The parties gave in evidence numerous conveyances and other documents, and produced some oral testimony; and the referee before whom the action was tried has found the issues in favor of the plaintiff. His conclusions of fact affirm that Tyler, the vendor, at the time of the conveyance owned the lands and interests in water, described in the conveyance, in fee simple, and had lawful right to sell and convey them; and that the defendant Hotchkiss acquired such title as the deed professed to convey. A judgment of foreclosure was accordingly rendered.

The defendant's counsel now asks us to examine the evidence of title, which being chiefly documentary, was not subject to question, and to pronounce that the conclusion arrived at by the referee was erroneous. In my opinion we are not at liberty to review a judgment of the supreme court in that way. Whether a party had at a given time a title to property is, as an entire proposition, a question of fact determinable by a jury or other forum appointed to determine questions of fact. Its solution may depend upon mixed questions of law and fact, or wholly upon questions of law, or of fact. It is very probable that in this case the title may depend upon the construction or the effect of one or more of the conveyances, or the covenants, given in evidence, and upon the slight and uncontradicted parol evidence produced to connect these documents with the subject

to which they relate. If the defendant was desirous of having our judgment upon this evidence, it was his duty to have the case so settled that the findings should have stated the facts established by the evidence, or such parts of it as raised the questions of law, and then have stated his conclusions of law upon the evidence. We are often asked, on the hearing of appeals here, where the findings of a judge or a referee present no questions which admit of an argument, to go into the evidence and determine that the conclusions of fact are erroneous, on the allegation that the evidence is all one way, and that on the undisputed testimony the conclusions should have been different. But we have thought, and have uniformly decided, that we are bound to take the facts as they are stated in the case to have been found by the judge or the referee, and compare the judgment rendered with those statements of fact. In dealing with this case in that way, we see that the judgment is in strict legal conformity with the facts as found by the referee, and that no other judgment could be given than the one which has been given.

I am aware that this method of disposing of this appeal causes the case to depend upon a matter of form. By the manner in which the papers are prepared, the real question between the parties, if there is such a question, is lost sight of. But this is the fault of the legal advisers of the defendant. The various and diversified subjects which are brought before the courts, cannot possibly be understood and mastered, unless they are set forth and stated in some formal manner. The law and the decisions of this court have determined the manner in which questions of law are to be presented to our consideration. If parties will insist on printing a mass of evidence, and upon that ask us to reverse a determination made by a tribunal to which is conclusively intrusted the determination of questions of fact, they will of course be disappointed.

But the defendant's counsel, moreover, claims a reversal of the judgment appealed from upon the rulings of the referee against him on two occasions in the course of the trial. By an instrument given in evidence by the defendant, dated November 28, 1845, to which one Coleman (under whom the vendor

of the premises sold to the defendant, claimed title), was a party, there were provisions for changing a part of the course of the water race by which the water was to be conducted to operate the mill on the land sold. A part of the water, a right to which was one of the subjects of the sale, belonged originally to the. riparian proprietors on the north side of the Cattaraugus creek, and it was one of the provisions of the instrument mentioned, that if the title to the north bank of the creek should fail and thereby prevent drawing the water through the contemplated new race, then the arrangements for changing the course of the race were not to take place, but the parties were to retain their antecedent rights. The plaintiff, it seems, sought to establish that the event thus provided for had happened; and for that purpose he offered in evidence a judgment roll in an action between the Seneca nation of Indians, plaintiffs, against one H. L. Knight, defendant, which record is annexed to the case. It appears by it that the plaintiffs recovered certain premises on the north bank of the Cattaraugus creek, opposite the point in controversy, and thus apparently established a title in the Indians as riparian proprietors and owners of water rights on that bank. It appeared that Knight was in possession under Sackett, through whom Coleman and the plaintiff claimed title, and who defended the action brought by the Indians. The record was received against the defendant's objection. I do not perceive why the evidence did not tend to establish, in some degree, the fact alluded to in the covenant; something more would probably be necessary to give it conclusive effect. A judgment in ejectment, acquiesced in for a certain length of time, confers title. 2 R. S. 309, § 38.

Another exception was taken to a ruling by which evidence offered by the defendant was rejected. Sackett, the source of title, as just mentioned, testified, on the defendant's examination, that he had had litigation respecting the race with two persons, whom he named. The defendant then offered in evidence a judgment record in favor of Sackett against one Shumway, who was not one of these persons, and stated that he offered it to show that Sackett's title to the north bank of the creek, at the point in controversy, had not failed. It was objected to as immaterial by the plaintiff's counsel, and rejected,

and the defendant took an exception. It does not appear what the contents of the record were. What the defendant expected to establish by it, is indeed stated; but, without a statement in the document of some subject of the action, and such a subject as related to the controversy on trial, it cannot be said that it was material or pertinent evidence. I do not think that error can be predicated of this ruling.

The defense in this action appears to have turned very much, if not wholly, upon the effect of the contract before mentioned, between Sackett of one part, and Coleman and others of the other part, of November 28, 1845. If the course of the race had been changed, as contemplated by the provisions of that contract, the water right embraced in the conveyance to the defendant would have been subverted, and the consideration for which the bond and mortgage were given would have failed. As the conveyance by Tyler, the plaintiff's assignor, to the defendant, contained a covenant of seizin, which, on the assumption that the grantor had no title, was broken as soon as it was made, it may be, as is argued by the defendant's counsel, that a defense *pro tanto* against these securities would have been established. It is clear that a cause of action against Tyler for a breach of covenant would have arisen. But Tyler was not a party to this action, so that the last mentioned question did not arise.

An important question would be presented if the merits of this action were before us, namely, whether the contract referred to did contain a present release of the right to draw water through what is called the old race. After an attentive consideration of its provisions, I am of opinion that it did not. Coleman, and those interested with him, had the right to open a new race. When such new race should be constructed, the release of the rights connected with the old one was to take effect. These rights were released to take effect when the new race should be completed. This was to be done in one year from the date of the instrument. The sale of these water rights appertaining to the old race, by Tyler, to the defendant, was made ten years after the contract; but the substituted race had never been constructed. I am of opinion that the right to draw water through the old race had not been extinguished; and I

am happy thus to find that no substantial benefit has been lost to the defendant by the inartificial manner in which the case in the present action was prepared.

The judgment must be affirmed.

BROWN, J. [After stating the facts.]—The only question upon the merits presented by this appeal is the right of the defendant to set up a failure of the title to the mortgaged premises, or to a part of them, in an action to foreclose a mortgage given for purchase money where there is no fraud and there has been no eviction or disturbance of the defendant's possession. This question has been decided in the negative in the cases of Abbott *v.* Allen, 2 *Johns. Ch.* 519; Leggett *v.* McCarty, 3 *Edw.* 124; Edwards *v.* Bodine, decided in the court of errors, 26 *Wend.* 109.

The defendant's counsel takes a distinction in cases when the breach complained of is of the covenant of warranty and of the covenant of seizin, claiming that when the breach is of the latter kind it may be set up as a defense in whole or in part to the action. The authorities referred to do not recognize any such distinction. In the first named case the chancellor says, in substance, that the court will not proceed to try the validity of an outstanding claim in the absence of the party in whom it is supposed to reside, nor will he be brought into court against his will to assert or renounce a title which he never asserted, or perhaps never thought of. There is no such practice or doctrine of the court. A previous eviction, or trial at law, is, as a general rule, indispensable.

It is not worth while to consider and determine the defendant's exceptions to the rulings of the referee upon the evidence, because, by the disposition of the defense upon the merits, they cease to be of any consequence.

The judgment of the general term should be affirmed.

All the judges concurred.

Judgment affirmed, with costs.