Folger, J.
The ultimate principles upon which the decision of this case should rest, are not undetermined nor obscure. The relative rights and duties of owners of superjacent lands, and of subjacent minerals, have been much discussed and passed upon. Then, too, the position of adjacent owners of land is an analogous one, and the rules which have *547 been laid down as to them, and often enforced, throw light upon the questions arising here. But at last it will be found that in this action, the findings of fact of the trial court, as is often the case, control in the main the decision of the appellate court.
Of important results in this case, are the rules, that this court is bound to take the facts, as they are stated in the case to have been found by the judge or referee, and to compare the judgment with those statements of fact (Farnham v. Hotchkiss, 2 Keyes, 9); that, in the absence of express findings of fact to sustain the judgment, it may look into the testimony, and, if there be evidence which will support the conclusions of law, it may infer that there was a finding of fact by the judge' or referee, though not expressed (Newman v. Frost, 52 N. Y., 422); but that, if there is any evidence upon which the judgment may rest, this court may not look into the testimony to determine whether there is preponderating evidence to the contrary; nor, where there is any contrariety of testimony, to determine whether it was correct to refuse to find a fact as requested. (Chamberlin v. Prior, 2 Keyes, 539.)
The whole estate was at first in Parks. He severed it by his conveyance to Downs. He transferred to Downs and his grantees only the surface land. It is said that such a transfer is of the surface, and of all profit which can be got from cultivating it, or building upon it, or using it; that thus much is intended to be conveyed. (Hext v. Gill, Law Eep. [7 Chy. App.], 700.) But as in the same conveyance, there is a reserve to the grantor of an important part of the general estate, and of important incidents thereto, it is manifest that if the reserve is effectual and still operative, there is imposed upon the estate conveyed a serious servitude; though it, in its turn, becomes to a certain extent dominant over the estate reserved. The remark in Hext v. Gill (supra) has a limit then, and that which Parks can be reasonably considered to have granted, is the surface land, and such measure of support subjacent, as was necessary for the surface land, in its condition at the *548 time of the grant, or in the state, for the purpose of putting it into which, the grant was made. (Cal. R. W. Co. v. Sprot, 2 Macq. Scotch App. Cases [H. of L.], 451.) The plaintiff, then, as the grantee by mesne conveyances from-Downs, is the owner of the surface, with all these rights of use and profit of it, subject to such limitations as result from the servitude which his estate is under.
There is a clause in the deed from Parks to Downs, " Reserving always all mineral ores, now known or that may be hereafter known, with the privilege of going to and from all beds of ore that may be hereafter worked, on the most convenient route to and from.” The learned justice has found that this is a reservation of all ore on the premises. It is also of a privilege of way upon the premises. There need be no difficulty, whether what is claimed to have been retained in Parks by this clause, is technically the subject of an exception, or of a reservation, or in part of one and in part of the other. (Craig v. Wells, 11 N. Y., 315.) There is no doubt of the intention of the parties to the conveyance. It was to keep in Parks and his future assigns, unconveyed to Downs and his assigns, all that which the meaning of the clause, had it been framed with strictest technicality, would have saved from the operation of the granting part of the deed. (Provost v. Calder, 2 Wend., 517; Bridger v. Pierson, 45 N. Y., 601 ; Whitaker v. Brown, 46 Penn. St., 197.)
A reserve of minerals and mining rights, is construed as is an actual grant thereof. It differs not, whether the right to mine is by an exception from a deed of the surface, or by a grant of the mine by the owner of the whole estate, therein reserving to himself the surface. (Shep. Touch., 100 ; Dand v. Kingscote, 6 M. & W., 174; Williams v. Bagnall, 15 Week. R., 272; see Wickham v. Hawker, 7 M. & W., 78 ; and comment thereon in Proud v. Bates, 34 L. J. [Chanc.], 406; S. C., 5 Am. Law Reg. [N. S.], 171-174.) A reservation of minerals and mining rights from a grant of the estate, followed by a grant to another of all that which was first *549 reserved, vests in the second grantee, an estate as broad as if the entire estate had first been granted to him, with a reservation of the surface. (Arnold v. Stevens, 24 Pick., 106.) Though a-reservation is to be construed most strictly against the grantor, still there will be retained in him, all that it was the clear meaning and intention of the parties to reserve from the conveyance. (Harris v. Ryding, 5 M. & W., 60; per Parke, B., p. 70.) These observations are made necessary, by positions taken and urged on the argument by the learned counsel for the plaintiff. And here is a fit place to notice, that Hilton v. Ld. Granville (5 Q. B. [48 E. C. L. R.], 701), much relied upon by him, in that it held that there cannot be reserved in a grant that which will deprive the grantee of the enjoyment of the whole thing granted, and that a clause to that effect must be rejected as absurd and repugnant, has in that respect been from time to time much questioned, and finally in effect overruled. (Rowbotham v. Wilson, 8 H. of L. Cases, 348; Duke of B. v. Wakefield, L. Rep. [4 H. of L.], 377; and see Hext v. Gill, supra, 700-716.)
The deed from Parks to Payntar, and that from Payntar to the defendant vest in it, then, all the estate which Parks did not convey to Downs, and all the rights incident thereto; and this estate and these rights are as great, as if he had made his deed to Payntar in the terms of the reservation in that to Downs, while he (Parks) owned the whole estate unsevered. It is an old rule, that, when anything is granted, all the means of attaining it, and all the fruits and effects of it are also granted. (Shep. Touch., 89, 100 ; Bacon Ab., Grants [I], 4.) This rule we have in more than one instance, of late, been called upon to apply in behalf of the grantee. In Corn-stock v. Johnson (46 N. Y., 615) it is stated so largely as this: “ Everything necessary for the full and free enjoyment of the mill passed as an incident appurtenant to the land conveyed.” (See, also, Voorhees v. Burchard, decided November, 1873.*) These were cases of mill sites conveyed; for the enjoyment *550 whereof there was necessary an easement over and upon intervening lands of the grantors. A grant of minerals in situ, reserving the surface, is not different. It is like, too, the grant of a close, within other lands of the grantor; or of an upper story of a house, the grantor still owning the lower. There the grantee has a right of way to his close, or to his upper story, through the premises of the grantor. (Pomfret v. Ricroft, 1 Williams’ Saunders, 321, note 6.) It is the same if the owner grants the surrounding lands and reserves to himself the close. (Id.) Hence a grant of minerals in the land gives a right to mine for them, unless there is a positive restriction in the grant itself.
The plaintiff claims that this general power, if thus acquired as an incident to a grant, is limited by an especial power or privilege, particularly mentioned in the grant or reservation. And as the reservation here does, in particular terms, stipulate for a privilege of going to and fro, he insists that this privilege is all that the defendant has. Such is not the effect of such a particular. (Earl Cardigan v. Armitage, 2 B. & C., 197; Green v. Putnam, 8 Cush., 21.) The right to work a mine, reserved by the grantor of the surface, carries with it the right to penetrate to the minerals through the surface of the land conveyed, for the purpose of digging them out and removing them. (Gould v. G. W. D. C. Co., 29 J. P., 820; S. C., 12 L. T., 842; 13 id., 109; Rogers v. Taylor, 1 H. & N., 706; Hext v. Gill, supra.) This being so, there must be included in the right to break through the surface, the right to do so in such manner as is most advantageous to the owner of the right to mine, so that the surface is not wholly destroyed. By this is meant, that he has the right to sink a shaft vertically, or to drive a way horizontally, or to do both in different places, so that he may reach the minerals and take them out from below the superjacent earth, following the veins of ore with excavations below the surface; always, however under the restriction, that what he does it is necessary for him to do for the reasonable use and enjoyment of his property in the minerals. We are aware that in Harr *551 ris v. Rydimg (supra), Lord Abinger, C. B., is reported as saying to the effect, that a reservation of mines and minerals gave no right to sink shafts or drive cuts upon the surface of the land from which the reservation was made. He is the only judge who there made such utterance. It was not upon a point involved in the case; it was made argumentatively. It is opposed to the general rule to be derived from other decisions. That case turned wholly upon the point, in which all the judges agreed, that miners were bound to leave reasonable support for the surface. True, Bayly, J., in Cardigan, v. Armitage (supra), says the incidental power “ would allow no use of the surface.” It is plain from the current of his reasoning, that he meant use of the surface as surface, in its unbroken state ; for he was then reasoning toward the conclusion, which he finally reached, that a reservation of coals below the surface, reserved also as an incidental right, the power of reaching them through the same surface. And in the same case, Holroyd, J., suggesting to counsel, arguendo, said: “ If the coal itself had been excepted, without more, that would have given a right of entry forever.” (And see Hodgson v. Field, 7 East, 613.)
The necessity which is to govern is not fixed and unvarying. The right may be exercised in a manner suitable to the business to be carried on. Such is the principle of the decision in the analogous case of Gayford v. Moffatt (Law Rep. [4 Ch. App.], 133), where it is held that a lessee of an inner close, becomes entitled to a right of way through an outer close, and that the way afforded to him, must be suitable to the business to be carried on by him, on the premises demised. And what is, perhaps but an expansion of the last proposition, the exercise of the right is not to be confined to the modes in vogue when it was first acquired. The owner of the mine may keep pace with the progress of invention and ingenuity, so far as is necessary to a profitable working of his property in competition with rivals. Hence, he may adopt new and improved methods, which are usually availed of in the same business, when the use of them is necessary *552 to him. This rule is drawn from the decision in Dand v. Kingscote (supra), where it was held that, under a right to a sufficient way-leave, ancient in origin, the coal owner was not confined to such ways as were in use at the time of the grant; and that under a liberty to sink pits, of like early origin, the right of erecting a steam engine and other machinery for draining the pits, with all proper accessories, passed as incidental thereto. The right there adjudicated upon, it is true, arose from the express terms of the reservation ; but if the right originally exists, it is conceived that it matters not, whether it is from the express terms of the instrument or as an incident to a general power reserved, and that, in the one case as well as the other, it may be exercised after modern methods. (And see Dyce v. Hay, 1 Macq. [H. of L. Cases], 305-312; Senhouse v. Christian, 1 T. R., 560.)
It is to be borne in mind all the while, that the rights which follow ownership as incident thereto, are no more nor greater than those which are necessary for the beneficial enjoyment of the property. It may be convenient to have other rights, less difficult or less expensive with them, to carry on the operations, but this is not the test. The learned counsel for the defendant insists, that the measure of the use which it may make of the plaintiff’s land, is not the most rigid necessity, but a reasonable convenience. It is said by Lord Mansfield, in Morris v. Edgington (3 Taunton, * 31) : “ It would not be a great stretch to call that a necessary way, without which the most convenient cmd reasonable mode of enjoying the premises could not be bad.” We do not think that this is sustained to that extent by later decisions; and see comments upon that case in Barlow v. Rhodes (1 Cromp. & Meeson, 439). In Lawton v. Rivers (2 McCord, 445) it is remarked: “ An inconvenience may be so great as to amount to that kind of necessity which the law requires.” In Pettingill v. Porter (8 Allen, 1) it is held; “ that there is a way by necessity, where another cannot be got or made without unreasonable labor and expense; and that in determining the question, the *553 jury may consider the comparative value of the land and the probable cost of such ways, and that the word necessary cannot be limited to absolute physical necessity.” But yet the way must be necessary, and the facts of each case must determine whether it or any other easement thus claimed is necessary. It must be more than one of mere convenience (Screven v. Gregorie, 8 Rich., 158), or one beneficial and convenient (8 - Allen, svggra), and is only commensurate with the existence of the necessity upon which the implied grant of it is founded, and ceases when the necessity for it ceases. (N. Y. Life Ins. & T. Co. v. Milnor, 1 Barb. [Ch.], 353.)
The defendant may not claim, as incident to the grant to it, that which is convenient. -It may have only that which is necessary, but may have that in a convenient way. One may have a way by necessity over the land of another; and having it thus, he may have it at a place and route which is convenient for him. But he never can have it because it is convenient for him, unless it is first necessary. The right arises from the necessity of the case, and not otherwise. It will be seen, when we come to consider the findings of fact and refusals, that this is of much importance. It is very rarely, then, that a case arises where, upon this test, the mine owner can justify the use of the surface for the lengthened keeping of his ore. Still more rarely, for the long-continued deposit of the rubbish from the mine, or for the erection of buildings for the storage of materials, the housing of animals or the use of artisans. So says Bayly, J., in 2 Barnewall & Cresswell (supra) : “ The incidental power would warrant nothing beyond what was strictly necessary for the convenient working of the coals. It would allow no use of the surface, no deposit upon it to a greater extent or for a longer duration than should be necessary, no attendance upon the land of unnecessary persons. It would be questionable at least whether it would authorize a deposit upon the land for the purposes of sale, and whether it would justify the introduction of purchasers to view the coals.” (See Kaler v. Beaman, 49 Maine, 207.) Turner v. Reynolds (23 Penn. St., 199), cited by the *554 defendant, seems adverse to this. But the language of the opinion is to be read in connection with the lease there, which was of the land as well as of the mine. It must be seldom that, after the ore is separated and haled out, that there exists a necessity for the use of the land in which it is found. It, and the rubbish found with it, may ordinarily be carried from the land on to the other possession of the owner of the mineral. It is ordinarily practicable for, the owner, to obtain possession of land near enough for storage and dumping ground, and for sites for all buildings requisite for the purposes above named. It is seldom that considerations of vital economy create the necessity which the law recognizes. “ Reasonable profit,” in the phrase of Parke, B., in Dand v. Kingscote (,supra), is all that the mine owner can insist is within the beneficial enjoyment of his property. The defendant cites Rogers v. Taylor (1 H. & N., 706), which does, indeed, go farther than this, and does sustain the heaping up of rubbish upon the surface lands. That, however, was a decision upon demurrer, where a plea was held good which set up a like user of over twenty years, and the court held that the right was not unreasonable and might have originated in grant; in express grant, we understand to be meant, to do the very kind of act complained of. (See Carlyon v. Lovering, 40 Eng. Law and Eq., 448.) These authorities are not applicable here.
We have considered the case so far, upon the incidental powers arising from the reservation of the right of property in the minerals. The privilege further reserved in the deed to Downs, and subsequently granted to defendant, of going to and from all beds of ore that might be thereafter worked on the most convenient route to and from, we have shown does not in any wise limit these incidental powers. On the contrary, it is plain that it aids them. It is not a right of way only over the surface; it is to all beds of ore thereafter worked. Of necessity, to reach beds below the surface, the way must go through the surface; not merely on a necessary or a convenient route, but,, as the terms of the privilege are, on the *555 most convenient route; hence by shaft or tunnel, or both, as shall give the readiest or the cheapest access, and also across the surface to the mouth of the tunnel or shaft.
The plaintiff insists, however, that whatever may have been the rights which were retained by Parks from his conveyance to Downs, they were intercepted, and extinguished or transferred, and did not reach the defendant. He sets up an adverse possession. He bases it upon the affirmative acts of Downs and his grantees, and upon the neglects and omissions of Parks and his grantees of the minerals. This claim of an adverse possession cannot rest merely upon a non-user by the grantors of the defendant. The rights now claimed by them were the subject of an express grant. In such case, though there be a non-user, if there has been no act of the owners of the surface lands which prevented the exercise of the rights of mining, they still exist. (Smiles v. Hastings, 24 Barb., 44; Armstrong v. Caldwell, 53 Penn. St., 284; and see Smith v. Lloyd, 9 Exch., 562.) Hor can it rest upon any act of the owners of the surface which appears in the case. To work such effect, the act must be hostile and adverse to the rights of the owner of the minerals. That cannot be predicated of the acts displayed in the findings or in the proof. Hot an instance is given of any assumption of control over the ore by digging it, or by preventing, interfering with or forbidding an attempt to dig it. The only acts shown, are those of Downs and others, in filling up, at times, and in places, the old cut to the vein, in changing, in places, the course of the old cart-way, and putting fences across with bars and openings therein. These were not accompanied with any claim of sole and exclusive right to the entire estate, nor to the way over it. They were not done, in avowed hostility and resistance of a claim of right by the grantors of defendant. They were not acts which were, of themselves, of necessity and natural result, hostile to other rights and exclusive of them. All that can be said of them is, that the owners of the surface lands had the use and enjoyment of them, and of the ways over them, *556 but after such sort as was entirely consistent, with the existence of a right of the owners of the minerals, to use and enjoy them and “ of way ” to them.. In fine, there is nothing shown but the suspension on the one side of the exercise of the right to mine, and on the other of acts, during such suspension, entirely consistent with the existence of such right, though suspended in its use. And this applies to all other rights reserved, as well as to the ownership of the minerals and the right to mine for them. For a discussion of this topic, so full as to forestall further elaboration here, see Arnold v. Stevens (supra).
There is one fact in this case not considered there, and which is urged by the plaintiff. The deeds from Downs and his grantees, down to that to the plaintiff, do not contain the clause of reservation which is in the deed from Parks to Downs. Such omission does not affect the conclusion we arrive at, as is held in Seaman v. Vawdrey (16 Vesey, 390).
The plaintiff acquired, as a right of property, that there should be left of the minerals, in their place under the land, sufficient to support the surface in its natural state. This was the extent of his right to subjacent support, there being no buildings upon the land when Parks conveyed to Downs, nor the erection of any, one of the purposes in their contemplation. (Cal. R. W. Co. v. Sprot, supra.) The defendant lays stress upon the small consideration given for the land. The right to support is without regard to the comparative value of the strata. (Humphries v. Brogden, 12 Q. B., 739.) This right to sufficient subjacent support is likened, sometimes, to that to have lateral support to land. In that case, all which can be claimed is, that the adjacent owner shall not so dig upon his land as that that of his neighbor shall fall into his pit. If the weight of buildings, of late erected by his neighbor on his land, causes it to slide, when of its own weight it would not, there is no claim for redress. (Lasala v. Holbrook, 4 Paige, 169.) Is it not the same rule, that whatever an adjacent owner can do upon or in his own land, confined within that, and neces *557 sary for the convenient and beneficial enjoyment of it, which works no physicial injury to his neighbor’s possession in its natural state, he may do without liability to his neighbor, although it may work physical injury to a building lately erected thereon by his neighbor ? For in Humphries v. Brogden (supra) the reason is given, that an owner cannot by putting an additional weight upon his own land, and so increasing the lateral pressure upon his neighbor’s land, render unlawful any operation thereon which before would have caused no damage. Is this exemption from liability confined to a case of lateral pressure ? If he may so dig as that the building shall topple down, and not be liable so long as that but for the building, the earth would not have fallen in ; may he not so blast in digging as that the building shall shake, crack and crumble, without giving cause of action, so long as that the surface of his neighbor’s ground is not injured or disturbed, though it be shaken ? He is not bound to support the building, so long as he affords a support sufficient for the soil without the building. He is not bound to refrain from digging in his own land, so soon as he comes near the limit of support for his neighbor’s building, not an ancient one. He is not bound to be circumspect in his means of digging, so long as they do not affect badly his neighbor’s land. Is he bound to refrain from the use of the means which do not injure his neighbor’s land, for that they badly affect a modern house thereon ? In our judgment he is not. (See Smith v. Thackerah, Law Rep. [1 C. P.], 564.) Whatever it is necessary for him to do for the profitable and beneficial enjoyment of his own possession, and which he may do with no ill effect to the adjacent surface in its natural state, that he may do though it harm erections lately put thereon. As the rights and relations of adjacent owners and those of superjacent and subjacent owners are alike, so may the subjacent owner do beneath the surface what the adjacent owner may do beside it. And where, as in Harris v. Ryding (supra), learned judges speak of the subjacent owner not being entitled to let down the surface or injure the enjoyment of it, they *558 mean the surface in its natural state, and not with additions to it in buildings not ancient. (And see Partridge v. Scott, 3 M. & W., 220.)
If or do these rights; (for a time and to a degree to impair the surface, and so that support be left sufficient for it in its natural state, to leave it insufficient to support buildings not ancient) ; require, or depend upon, a covenant to make compensation, as is urged by the plaintiff. It is true that many reservations of such rights are accompanied with a covenant to compensate. The covenant does not create or add to the reservation. The privileges are created, fixed and defined, by the term's of the reservation alone. If there be a reservation without a covenant, the rights it creates^ or retains are just as valid and maintainable.
If or does this case fall, in its main aspects at least, within the rule recognized and applied in Hay v. Cohoes Co. (2 N. Y., 159). There the adjacent owner, though following a lawful purpose upon his own land, in excavating a canal thereon, cast rocks from it upon his neighbor’s land. He immediately and physically invaded his neighbor’s exclusive possession. He had the right to dig the canal. His neighbor had the right of undisturbed possession of his property. It was held, on grounds of public policy, better, if these rights conflicted, that he should give up the right of a particular use, than that his neighbor should lose the beneficial use of his altogether. Here, however, the case, if not reversed, is nearly so. The sole use which the defendant can make of its property is to excavate and remove it. If it is doing only what is necessary to that end, shall it give up altogether the sole beneficial use of its property, that the plaintiff may use his undisturbedly in one way, the most profitable, doubtless, and the most desirable, but still one way of several ?
And so of the argument brought by the plaintiff, from the analogy of those decisions, which hold that one may not so use his property as to make a nuisance to his neighbor. There can be no rightful complaint thereof by one who has agreed that such use may be made. The reciprocal rights *559 and obligations of these parties, in this regard, come down from the contract between Parks and Downs, to which they are privies. Parks reserved the right to himself and to the defendant to do all things necessary to get at and get out this mineral; and Downs, for himself and for this plaintiff, in consideration of the sale and conveyance of the surface of this estate at the price bargained for, agreed that all necessary things might be done. One may not establish a right to make a public or a private nuisance by prescription, which is the presumption of a grant. (Mills v. Hall, 1 Denio, 315.) But where there has been an express grant of a right to do all things necessary to attain an end, and such nuisance results as a necessary incident thereto, there can be no claim for private damage from the doing thereof.
The point made by the plaintiff on his printed brief, that it was but the limited right of certain persons to mine which was reserved by Parks, is not sustained by the proofs. The folios to which he refers have been stricken out of the appeal book ; it seems by stipulation.
The plaintiff also invokes the doctrine of estoppel, and insists that the defendant, having reposed upon its rights, if any it had, until the plaintiff had changed his condition by large expenditures upon his property, may not now, with good faith toward him, insist upon those rights to his detriment. There is no estoppel in the case. It does not appear that the silence or inaction of the defendant misled the plaintiff, or that he at all relied thereupon in his making his primary investment in the premises, or his subsequent expenditure in their improvement.
Having thus given our views of the legal questions involved in the case, it remains to determine the result of their application to the facts. The plaintiff appeals from so much of the judgments below, (upon the questions other than his damages), as are based upon the conclusions of law of the learned justice at Special Term, expressed as follows: First, that the defendant owns, all mines, minerals and ores upon the plaintiff’s lands described in the complaint. Second, *560 that there has been no adverse possession thereof. Third, that it has a right to enter upon plaintiff’s premises and to dig through the surface in order to procure such ores. Fourth, and so to do at the place and in the manner in which it has opened and dug their drift-way in front of plaintiff’s bank wall. Fifth, that there has been no adverse possession sufficient to defeat this right. Sixth, that the defendant has a right to maintain a rail or tramway at the place where the same has been built on the plaintiff’s premises fur the purpose of working such mine. Seventh, and that the defendant has a right to use and sink a steam engine on the premises of the plaintiff for the purpose of working said mines.
In our judgment the learned justice was correct in arriving at these conclusions. The first, second, third and fifth have been shown to be correct, directly, in the foregoing discussion. The fourth, sixth and seventh depend entirely upon the fact of whether the acts therein mentioned were necessary for the profitable and beneficial enjoyment of the property of the defendant in the minerals. The learned justice has not in terms found as matter of fact that the use in these particulars was thus necessary. And although he has refused to find that all of the use made by the defendant of the plaintiff’s ground has been necessary in carrying on the operations of the mine, he has not found, nor has he refused to find, that the use in the particulars comprehended in the above conclusions of law, was not necessary for some lawful purpose of the defendant. So that we are enabled to look into the evidence, and to make inferences therefrom in support of the conclusions of law and the judgment arrived at by him. We find that there is enough in the testimony, to sustain a finding of fact, that the use of the plaintiff’s land was in these particulars thus necessary. We so infer.
The defendant appeals from the judgment, and has excepted to some of the conclusions of fact. We think that the conclusions thus excepted to are immaterial to the questions now in contention, or are sustained by some of the testimony given. The learned justice does, indeed, find *561 that the defendant has caused the plaintiff’s land to subside arid fall in. We find no testimony of such subsidence, save at the tunneling following the old drift-way. And so the finding, made on the request, limits it. The subsidence there, is not of the land of the plaintiff, except that which was made by the filling in of the old drift. The learned justice found no damages to have resulted from that subsidence. In that respect, the finding of fact is not material. He does find, as a conclusion of law, that the defendant has no right so to work the mine as to deprive the plaintiff’s premises of the necessary support to prevent the surface from falling in. As an abstract proposition, this is correct. He does adjudge that they be restrained from removing the subjacent support from the plaintiff’s premises, so as to cause any portion thereof to subside or fall in. This looks to the future. It does not apply, nor does it seem to be meant to apply to the falling in on the route of the old cut. And, so understood, there is no error in so adjudging. Hor does it seem material to any question really mooted upon this argument. At any rate, as a restraint in the future from doing what it should not do, it cannot harm the defendant. We, therefore, regard the finding of fact, in this particular, as immaterial.
The learned justice found that the blasting was not conducted with the care usual in such cases. The testimony on which to sustain this is not very great. It is true that the effects of the blasting upon the house and reservoir of the plaintiff have been marked; and it is true that it is in the testimony, that it is not usual for the blasts to produce such effects, so that it may be said consequentially that the blasts have not been such or so conducted as is usual. Yet it is also in the testimony that the house of the plaintiff is peculiarly founded ; on the solid rock, some feet below the surface. The effect upon it, may be quite as much from this peculiarity of structure, as from the lack of care in the blasting. For the evidence is not variant, that no greater amount of powder is used to a charge than is common among miners. It was, however, a question of fact for the trial *562 court, and there is testimony from which such a finding may be drawn.
It has also excepted to the refusals to find as requested. Certain of these are as-fully met as the defendant has a right to insist upon, by a finding of the request, with a qualification which is sustained by portions of the testimony. Some of them are refused, where no evil result seems to have followed to the defendant; for no conclusion of law or adjudication has been made, inconsistent with the existence of the fact, the finding of which was requested. Those of them, in which the defendant requested the learned justice to find that .all' of the use made by it of the ground was necessary in the operation of the mine, were addressed to the very important issue in the case, upon which much of the testimony taken had a bearing. The learned justice had before him testimony which, if he gave it preponderance, sustains his refusal. Others of requests refused are not now material, or were properly the declined. The important one, as to the blasting, contains several matters, some of which might well have been found, but others which we think that it was in the learned justice to decline, according as he viewed and weighed the variant testimony. Thus it was shown, without contradiction, that it is customary to blast by night as well as day in mining; it was testified that the defendant had taken all the care that it possibly could in blasting, and had done nothing that was not necessary; that the charges did not exceed one pound of powder to any blast, while blasts are customary, made with twenty-five pounds; it was testified, with no contradiction, that there was no other way of dislodging the ore than by blasting it out. On the other hand it was shown that the effects of the blast were much felt by the plaintiff and his family and his house, and that it was unusual for a house to be so affected by the blasting in a mine. How, one request refused contained this clause : “ The blasts of the defendant have not been unusual in size.” We have before commented on the affirmative finding of fact on this subject, and for the same reasons we are obliged to conclude that *563 here was the power in the learned justice to refuse to find as requested. He might infer, from unusual effect, unusual power. ' Another request refused was that the defendant’s operations in blasting had “ been conducted with all possible care.” The same reason applies to the refusal of this.
The defendant excepts to the several conclusions of law: 1st. That the tramway cannot by right be raised above the level of the ground, unless so high as that it may be, passed under by horses and carriages. 2d. That it has no right to deposit or keep upon plaintiffs land any ore or refuse stuff or rubbish, or any barn, stable, blacksmith shop, powder-house or other building. 3d. That it has no rijght to blast in the night-time, during the hours for sleep. 4th. Hor at any time so as to shake, crack or injure the erections of the plaintiff. 5th. That it has a right to sink a steam engine on the premises, for the purpose of working said mine, but not in the manner in which it has operated it. 6th. That it has no right so to work the mine as to deprive the plaintiff’s premises of the necessary support ■ to prevent the surface from falling in. 7th. To the amount of damages and to the judgment ordered.
The sixth of these findings, for reasons above given, must be construed as holding no more than that the surface, in its natural state, must have sufficient support from the underlying minerals. In this view it is correct.
As to all the rest of these conclusions, except as to one hereafter especially noted, they are right or not, as is found the one controlling question of fact whether the acts of the" defendant to which they refer were or were not necessary for the profitable and beneficial enjoyment of the defendant’s property. We have given our view of the legal principles which should govern such cases as this. It will have been observed that the application of them hinges on this fact. The learned justice has not found it; he has refused to find it. He would find no more than that it was convenient. 1 Whatever might be our opinion as to the necessity of the use, if we should look into the testimony, we are not at liberty *564 so to do, to reverse a judgment, when there is any testimony which will sustain him in not so finding. And that, there is. One conclusion of law excepted to is : That the defendant has no right to blast in the night-time, during the hours for sleep. And, based upon this conclusion of law, is an adjudication that it be restrained from blasting upon or underneath the lands of the plaintiff, in the night-time, during the hours usually devoted to sleep. There is no support for this conclusion and adjudication in any of the findings of fact, unless it be these: first, that the blasting in the night-time does disturb the sleep of the plaintiff and his family, and as a consequence affects their health; and second, that the improper and unlawful blasting, in the night-time, has diminished the value of the plaintiff’s premises. The first fact stated is not sufficient. It is an effect of the act; the same as the rupture of the surface of the land in driving the cut is an effect of an act. Tet, unless the acts are without necessity, the defendant is not to be restrained. ' It is usual to blast, and the ore cannot be got without it. It is usual, in all mines, to work and make blasts by night as well as by day. Of course it is, for day is as night down in the mine. The second statement, “ improper and unlawful blasting in the night-time,” if it be received as a finding of fact, does not warrant the conclusion of law, that the defendant has no right to blast at all in the hours of the night devoted to sleep. ■ It would warrant no conclusion other than that it has no right to blast improperly and unlawfully, and that it be restrained from that. Looking into the testimony to see what facts are shown on this head, we do not find any that will sustain a finding that it is not necessary for the defendant to blast of nights. Eather the contrary. The General Term, it would seem, was of this opinion, for it disallowed the damages awarded the plaintiff on this account; but it did not modify the judgment by reversing that part which restrains the blasting at all during sleeping hours.
It will be seen that, technically, there is but one error, of *565 the learned justice who tried the action, go disclosed by the case as to authorize this court, according to settled rules, to disturb the judgment. And yet it will also be seen, that the findings of fact and the request and refusals to find, fail to apply with strictness to the acts and doings of the parties upon these premises—the legal test which will alone exactly and correctly determine their relative rights and duties. That is the test of necessity. As to each of the acts of the defendant complained of, it should have been found as a matter of fact, whether or not it was necessary to be done for the reasonably profitable enjoyment of its property in the minerals. Without this test applied by the courts, the differences between the parties fail to have been correctly and finally determined. For this reason we have concluded, rather than to modify the judgment in the one particular, to reverse it, and to send the case back for a new trial.
In this view it is unnecessary to look into the questions raised as to the various items of damages adjudged.
The judgment should be reversed and a new trial granted, costs to abide the event.
All concur.
Judgment reversed.

 Ante, p. 198.