R. O. BURTON, Adm'r, v. L. A. FARINHOLT and others.

*Insurance—Fraudulent transfer of chose in action—Remedy of creditor in equity—Executors and Administrators—Estoppel.*

1. A life insurance policy issued to one for the benefit of himself, executors, &c., becomes upon his death a part of his estate, like any other chose in action ; but otherwise, where the same is taken in the name and for the benefit of the wife or children.

2. A voluntary transfer of a chose in action by an insolvent donor to his children, without valuable consideration, is fraudulent and void, and the same may be reached in equity by creditors and subjected to the payment of their debts.

3. An administrator is estopped by the act of his intestate, who in his lifetime assigns personal property even though fraudulently, to deny the title of the assignee, and cannot maintain an action to recover the same. But an action will lie at the instance of the creditors of the estate against the holders of the property—the intestate's act being void as to them.

BURTON *v.* FARINHOLT.

*Gentry* v. *Harper*, 2 Jones Eq., 177; *Pool* v. *Glover*, 2 Ired., 129; *Doak* v. *Bank*, 6 Ired., 309; *McGill* v. *Harman*, 2 Jones Eq., 179; *Sutton* v. *Askew*, 66 N. C., 172; *Coltraine* v. *Causey*, 3 Ired. Eq., 246; *McMorine* v. *Storey*, 4 Dev. & Bat., 189; *Sturdivant* v. *Davis*, 9 Ired., 365; *Norfleet* v. *Riddick*, 3 Dev., 221; *Winchester* v. *Gaddy*, 72 N. C., 115; *Henry* v. *Willard*, 73 N. C., 35, cited, distinguished and approved.)

CIVIL ACTION tried at Fall Term, 1881, of HALIFAX Superior Court, before *Gilmer, J.*

On the 13th of June, 1866, the late Edward Conigland effected an insurance of five thousand dollars on his life with the Ætna Insurance Company, of Hartford, for the benefit of himself, his executors, administrators and assigns, and procured a policy for the same payable ninety days after notice and proof of death. On the 14th of June, 1877, he made a voluntary assignment of said policy to his three daughters, the defendants Fanny, Annie and Margaret—he being then insolvent and without retaining property sufficient to pay his debts.

In December, 1877, he died intestate leaving surviving him his said three daughters, all minors—the defendant Fanny having since intermarried with the defendant L. A. Farinholt. Since his death the amount due on the policy has been paid to the defendant Hervey as guardian of the said daughters, who, upon the marriage of the said Fanny, paid over to her husband fourteen hundred dollars of the amount.

The combined real and personal estate of said intestate is insufficient to pay his debts, and hence it is necessary to resort to the insurance fund, and the plaintiff, who is his administrator, insists that he has a right to subject so much of that fund as may be needed for the purpose, to the payment of the debts. This is the nature and scope of the action.

The defendants demurred to the complaint and from the judgment overruling the demurrer they appeal.

*Mr. Thomas N. Hill,* for plaintiff.

*Messrs. J. B. Batchelor* and *Day & Zollicoffer,* for defendants.

Ruffin, J.   On the argument here three points have been raised for consideration :

*First.* Whether the transfer of the policy can be held to be fraudulent as to creditors, upon the mere ground that it was voluntary and without valuable consideration, and that the assignor was at the time insolvent.

*Second.* Whether the fund derived from the policy can be followed in the hands of the daughters, and subjected to the payment of debts, since the policy was but a *chose in action* and not itself the subject of execution.

*Third.* Whether the plaintiff. as administrator can maintain this action, or whether he is estopped by the assignment of his intestate.

The court has very decided convictions as to the law upon every question suggested by the demurrer.

The life policy in question was the property of the plaintiff's intestate. As soon as delivered, it vested in him, and like any other *chose in action* became an integral part of his estate, subject to every rule of property known to the law. , Being indebted to a state of clear insolvency at the time of its voluntary assignment to his daughters, his act was fraudulent as to his creditors and void in law, whether made with an intent actually fraudulent or not. It is principle of the common law, as old as the law itself, and upon which the preservation of all property depends, that, except so far as the same may be exempt by positive law, the whole of every man's property shall be devoted to the payment of his debts. He cannot gratuitously give away any part of it, the law meaning that he shall be just to his creditors before he is generous to his family. From the fact that he was at the time insolvent, and that his transfer to his daughters was without valuable consideration, it results, as a conclusion of law, that the assignment was void as to

his creditors.   As said in *Gentry* v. *Harper*, 2 Jones Eq., 177, it is against conscience for debtors to attempt in any way to withdraw property or effects from the payment of debts, and if the courts of law cannot reach the debtor's interest, a court of equity will.   True, the constitution of the state (Art. X., § 7) provides that a husband may insure his life for the sole use of his wife and children, and that in case of his death the amount insured shall be paid to them free from the claims of his creditors; and counsel here insist that the assignment of the policy, already procured, to his daughters was in effect the same as if the intestate had taken out a new one professedly for their benefit.   But is it so? If taken directly in their names and for their benefit, it would have been, *ab initio*, their property, and would never have constituted a part of their father's estate, upon the faith of which he could, and perhaps did, obtain credit— and that is the test.   If his creditors, when trusting him, relied or had a right to rely upon his life assurance as a source of payment, then the law will not permit them to be disappointed by a free gift of it to another.   It will put it into the power of no man to obtain a false credit.

As to the second point, the defendants' counsel insist, that the assignment being of a *mere chose in action*, which could not be subjected to execution by creditors, the case does not fall within the statute of frauds, and for this they cite Story's Eq., Jur., § 367, where, in defining the English doctrine on the subject, it is said, " that in order to make a voluntary conveyance void as to creditors, either existing or subsequent, it is indispensable that it should convey property which would be liable to be taken in execution for the payment of debts; that the statute of 13th of Elizabeth did not intend to enlarge the remedies of creditors, or to subject any property to execution which was not already, in law or equity, subject to the rights of creditors."

The author, however, admits that there has been, and still

is, a great diversity of opinion on the point, and no one who will take the pains to examine the precedents bearing upon it, can avoid a feeling of surprise at the extent to which that diversity has been allowed to proceed upon a matter of such practical importance.

In the early English adjudications very decided ground was taken in favor of the creditors' right to pursue the *choses in action* of their debtors, in the hands of fraudulent alienees. *Taylor* v. *Jones,* 2 Atkyns, 600; *Horn* v. *Horn,* Ambler's Rep., 79. But the later decisions are all clearly the other way, and settle the rule to be as stated in Story.

In *Bayard* v. *Hoffman,* 4 Johns., ch. 450, the late learned CHANCELLOR KENT carefully reviewed those recent decisions of the English courts, and the reasoning upon which they proceeded, and did not hesitate to characterize them as having a tendency to encourage fraudulent alienations, and as being injurious to creditors and subversive of justice; and he declares that he should be sorry to see their doctrine become the settled resolution of the courts. According to him, the right of a creditor to subject the property of his debtor applies to whatever is in law the property of the debtor, except such portions as may be specially exempted by law; and if this right cannot be made availble *at law,* because of some peculiar condition or nature of the property, that very circumstance furnishes a reason why it shall be enforced in a court of equity. This exposition of the law has been accepted by a large majority of the courts, (as may be see n by reference to the notes of Kent's Commentaries, vol. 2, p. 574, and Bump on Fraud. Conveyances, 263, where the cases are collated,) and certainly we conceive it to be founded on the better reason and more equitable principle.

The jurisdiction of a court of equity to enforce the application of equitable assets to the payment of debts, is conceded and of every day experience, whenever the remedy at law shall prove to be ineffectual, and the property cannot

be reached by execution. Would it not be singular, beyond measure, that such a court should be incompetent to administer relief as to assets fraudulently transferred and placed beyond the creditor's reach, when we reflect that fraud is one of the very sources from which its jurisdiction flows? The statute of frauds would be shorn of half its vigor and virtue in the suppression of fraudulent contrivances, if its operation is to be confined to transfers of such property as may be taken in execution. Indeed, such a construction given to it would be to invite debtors to convert their tangible property into securities, for the purpose of defrauding their creditors and bestowing them upon their own families.

In *Pool* v. *Glover*, 2 Ired., 129, and *Doak* v. *State Bank*, 6 Ired., 309, decided by this court—the first in 1841 and the latter in 1848—it was held that choses in action could be made liable to the satisfaction of a judgment, neither upon execution nor by a decree of a court of equity; not by the former, because they were not *goods and chattels;* nor by the latter, because they were legal, and not equitable rights; and that the only way by which a creditor could reach them was by taking execution against the body of the debtor, and thereby coerce him to surrender them in satisfaction of the debt—a remedy which, it was said, the court of equity deemed adequate, and therefore saw no necessity for coming in to aid the law. This was evidently spoken with reference to the *choses* held by the debtor and subject to his control. But in no reported decision of this court, have we been able to find a suggestion even of a purpose to curtail the jurisdiction of the court of equity over fraudulent transfers of a debtor's property, and make its exercise dependent upon the character of the property alienated. So far from that, we have a precedent for the actual exercise of that jurisdiction, and in relation to just such property as is here involved, in *McGill* v. *Harman*, 2 Jones' Eq., 179. There, a son had received from his father, without consideration, and

in contemplation of the latter's insolvency, *a note* on a third person due the father, and had used the same in payment for a tract of land, and it was held that the creditor had a right to hold the son liable for the amount of the note, and to look to the land as his security.

But, should there be a doubt as to the general power of the court to aid creditors under such circumstances, we should be disposed to hold that it obtained, in this particular instance, from the very necessity of the case.

In the present state of our law, as altered since the decisions in *Pool* v. *Glover* and *Doak* v. *Bank*, choses in action, whether held by the debtor himself or another for him, are made available for the payment of debts by proceedings supplemental to execution; and in *Sutton* v. *Askew*, 66 N. C., 172, it was held that a bond in the hands of a fraudulent alienee could be reached by a creditor after that manner. Here, however, the principal debtor is dead, and his personal representative, as we shall presently see, is incapacitated, by the estoppel growing out of his intestate's assignment, to intervene in the matter in any way. So that, there is no judgment in the case, and by possibility can be none under which supplemental proceedings can be conducted, and unless an action will lie directly against the present holders of the property transferred, then the law would be guilty of the inconsistency of allowing a right and affording no remedy for its enforcement.

Our conclusion therefore is that the life policy, notwithstanding its intangible form, or its proceeds in the hands of the defendants, may be reached, with the aid of the court, and made subject to the debts of the intestate by any one who occupies such a relation to him, as confers a right of action.

And this brings us to inquire of the plaintiff's right in this particular.

In *Coltraine* v. *Causey*, 3 Ired. Eq., 246, cited by counsel

for the defendants, this court ruled that an administrator could not maintain a bill for setting aside a deed on the ground that it was given by his intestate to defraud creditors, for that, he occupied the exact relation to the deed that his intestate did, and was equally estopped thereby, but that the defrauded creditors might have their action against the fraudulent alienee as executor *de son tort.* To the same effect are the cases of *McMorine* v. *Storey,* 4 Dev. & Bat., 189, and *Sturdivant* v. *Davis,* 9 Ired., 365.   But the most striking instance of the application of the rule is found in *Norfleet* v. *Riddick,* 3 Dev., 221, in which case a regular administrator, who held property of his intestate under a conveyance fraudulent as to his creditors, was sued by them, as executor *de son tort,* and their action was sustained.   In discussing its propriety, Chief Justice HENDERSON said, it must be so *from necessity ;* that the conveyance operated alike as an estoppel on the intestate and his administrator, but did not bind the creditors as to whom it was void ; and as they could not reach the property through the defendant as administrator, they must be allowed to have their action against him as executor *in his own wrong,* or else there must be a failure of justice.

From a resolution of the court, so explicitly pronounced and reiterated, we do not feel at liberty to depart, because of any difficulty that may exist (as is suggested) in enforcing it, under the present law touching the administration of deceased persons' estates, at least, not without some more specific expression of the legislative will to that effect, than is to be found in any law yet enacted.

*Winchester* v. *Gaddy,* 72 N. C., 115, and *Henry* v. *Willard,* 73 N. C., 35, were both actions, brought under the present system, against the defendants as executors *de son tort* ; and while the plaintiffs failed in both, on other grounds, there was no suggestion in either case of any difficulty in maintaining such actions because of the law which directs a *pro*

*rata* application of the assets, and we cannot suppose that so important a matter was overlooked.

Whether in such an action, instituted at this day, the plaintiff will be permitted to sue in his own name and thereby acquire a preference in the particular assets recovered, or whether he shall sue, as in a creditor's bill, for himself and all others alike interested, are questions not now necessary to be determined, and too important to be lightly determined, especially, as we do not find ourselves in the present state of the argument fully in accord with regard to them. But be it either way, we apprehend it will be found in actual practice to interfere with the general administration of estates by lawful representatives, less frequently and seriously than seems to be supposed, and certainly not sufficiently so to justify the court in dispensing with a long and well established principle of law.

The plaintiff being estopped by his intestate's act of assignment to deny the title of the defendants to the policy or its proceeds, cannot maintain this action, and the judgment of the court below is therefore reversed and the demurrer sustained.

Error.                                    Reversed.