TAYLOR v. LAUER.

(November 13, 1900.)

1. *Assignment for Benefit of Creditors—Preferences.*

An assignment for the benefit of creditors omitting certain creditors is invalid as a preference.

2. *Assignment for the Benefit of Creditors—Assignee—Fraud—Creditors.*

The assignee represents the creditors and may recover property which has been fraudulently conveyed by his assignor.

3. *Assignment for the Benefit of Creditors—Schedule—Time for Filing.*

Assignor must file schedule of preferred debts within five days after registration of assignment.

CIVIL ACTION by Z. V. Taylor, assignee of Max Pretzfelder, against Martin Lauer and Leon Lauer, merchants and partners, trading under the name and style of Louis Lauer, Isaac Selz, Moses Selz and Banjamin Selz, merchants and partners, trading under the name and style of Selz Brothers, heard by Judge *Frederick Moore* and a jury, at Spring Term, 1900, of GUILFORD Superior Court. From judgment for plaintiff, the defendants appealed.

*Chas. M. Steadman* and *Bynum & Bynum,* for plaintiff.
*J. T. Morehead,* for defendants.

MONTGOMERY, J.   On the 22d of March, 1898, Max Pretzfelder, being hopelessly insolvent and owing many debts, executed and delivered to the firms of Louis Lauer (the defendant, Martin Lauer, being a partner) and Selz Bros., a bill of sale of his entire stock of goods and other personal property—

substantially his entire assets. The consideration expressed in the deed was $3,447—the indebtedness of Pretzfelder to the two sets of creditors, grantees. A week later Pretzfelder made an assignment of the same property to Z. V. Taylor for the benefit of numerous creditors mentioned in a schedule annexed thereto, embracing the two firms above mentioned. Taylor, the assignee, called upon Martin Lauer, who had possession of the property conveyed in the bill of sale, and demanded possession of the same, and the demand was refused. This action was begun by Taylor, the assignee, by the issuance of a 'summons against all the individual members of the two firms, grantees in the bill of sale; and in the original complaint it was alleged that it was the purpose and design of Pretzfelder, in executing the bill of sale, to hinder and delay his creditors, and to afford ease and comfort and credit to himself, and that "said bill of sale, though absolute in form, was intended and understood by all parties interested therein, to be in the nature of a mortgage to secure the debts due said mercantile firms, amounting to between $3,400 and $3,500, all of which said facts, together with the said purposes and design of said Max Pretzfelder, to hinder and delay his creditors, and to afford ease and comfort to himself, were well known and understood to said mercantile firms of Louis Lauer and Selz Bros., who availed themselves of said facts, purpose, and design to illegally profit themselves at the expense of the other creditors of said Max Pretzfelder."

It was also alleged that Martin Lauer, one of the defendants, rapidly sold out the entire property, and turned over the proceeds of the sale to the grantees. The value of the property was alleged to be $7,000, and judgment was demanded against the defendants for that amount. The plaintiff afterwards amended his complaint by adding, "The said bill of

sale, though absolute in form, was intended and understood by all parties interested therein to be in the nature of a mortgage to secure the debts due said mercantile firms, amounting to between $3,400 and $3,500," and later by adding to the amendment the following: "In securing said bill of sale, an undue advantage was taken of the necessities of said Max Pretzfelder by his indebtedness to said firms of Louis Lauer and Selz Bros., who, availing themselves of their power over said Pretzfelder, obtained said bill of sale, promising and agreeing that after their debts were paid the balance of the stock of goods and articles conveyed to them should be returned to said Pretzfelder." Upon the trial the plaintiff introduced the assignment as evidence of his title to the property, the third section thereof being in the following words: "Thirdly, to pay and discharge in full, if there be sufficient for that purpose, all the debts and liabilities now due, or to become due, from the said party of the first part, and which are particularly enumerated and described in a schedule thereof hereto annexed, marked 'Schedule B,' together with all interest moneys due, or to grow due thereon, and, if there be not sufficient of said proceeds to pay the said debts and liabilities in full, then to apply the same *pro rata,* so far as they will extend, to the payment of the said debts and liabilities according to their respective amounts. And if, after payment of all the costs, charges, and expenses attending the execution of the said trust, and the payment and discharge in full of all the lawful debts owing by the said party of the first part, of any and every description, there should be a surplus of the said proceeds remaining in the hands of the said party of the second part, then, lastly, to pay over and return the same to the said party of the first part, his executors, administrators, and assigns." There was undisputed testimony that there were two debts (one of considerable

amount) due by Pretzfelder to other creditors than those named in the schedule of indebtedness.

The plaintiff insisted that the assignment was a general one for creditors, and without preferences, and therefore offered no proof of the filing of a schedule of preferred debts by the assignor as required by chapter 453 of the Acts of 1893. The defendant moved to dismiss the action under chapter 109, Acts 1897. We are of the opinion that the motion should have been allowed. It was incumbent on the plaintiff to make out his title to the property. The fact that the debtor,Pretzfelder, at the time he made the assignment to the plaintiff, owed two debts which were not embraced in the schedule of indebtedness mentioned in the assignment, carried with it the conclusion of law that the creditors named in the schedule were, to all intents and purposes, preferred creditors. If this be not so, then all an insolvent debtor would have to do to avoid the provisions of section 1, c. 453, Laws 1893, would be to name certain of his creditors in the deed of assignment, without specially making any preference in their favor, and leave out of the assignment other of his creditors. The assignee here can not pay any part of the assets, if he should recover them from the defendants, to any of the creditors not mentioned in the assignment, until he has paid in full the debts named in the schedule. The form of this assignment, with respect to chapter 453 of the Acts of 1893, would be a good one, as a general assignment for creditors, provided the schedule should contain the names of all the creditors and the amount of their debts, or as near the amount of their debts as possible; but, when there are other creditors not named in the assignment, then such a form becomes an assignment with preferences. And it matters not whether the failure to insert all of the indebtedness in the schedule arises from intention or negligence or ignorance. The effect is the

same.    If an insolvent debtor desire to make a general assignment for the benefit of creditor, and is unable to state the names of all his creditors, through ignorance of the extent of his indebtedness, he should make that statement in the deed, and provide for the payment of all such indebtedness on an equal footing with his other creditors, upon proof of their claims, made within a reasonable time.    If he should name, as in this case, certain of his creditors, and declare them to be all of his creditors, the assignee can recognize none others—at least, until those named are paid in full.    In this case it appears from the testimony of the assignor that he knew of the two debts not embraced in the schedule.    Two days before the assignment was executed, he was dunned persistently for one of them.    Under the laws of North Carolina an insolvent debtor may, by deed of assignment, prefer certain of his creditors, but there is a condition attached to such act, which must be complied with, or the deed will be invalid; *i. e.,* the preferred debts must be reported by the assignor under oath, and filed in the office of the Clerk of the Superior Court of the county in which the assignment is made within five days of the registration of such deed of assignment, stating the names of the preferred creditors, the amount due each, when the debt was made, and the circumstances under which the debt was contracted.    *Bank v. Gilmer,* 116 N. C., 684; *Glanton v. Jacobs,* 117 N. C., 427.

Several other important questions were raised on the appeal, but the view we have taken of the case disposes of the necessity of a consideration of them.    However, one of them is of so much consequence in the administration of the law in this State; and, having been for the first time only very recently determined by a decision of this Court, we have concluded to consider it.    The defendant demurred to the complaint after having objected to the second amendment thereof.

TAYLOR v. LAUER.

The ground of demurrer was to the effect that the plaintiff assignee was bound by the bill of sale executed to the defendants by Pretzfelder, his assignor, and that the plaintiff could not attack the bill of sale for fraud. The demurrer was properly overruled. The plaintiff assignee is the representative of creditors, and for them can seek the recovery of property which may have been conveyed in fraud by his assignor. *Bank v. Adrian*, 116 N. C., 537; *Pillsbury v. Kingon*, 33 N. J. Eq., 287. The reasoning of the last-named case is entirely satisfactory to the Court, and the discussion is a full one. In one of the English cases cited there, it is said by the Judge who delivered the opinion: "I think that the assignee of an insolvent debtor represents the creditors for all purposes, and, if any fraud exists in a transaction to which the insolvent was a party, may take advantage of it. A deed which is void as against creditors is void, also, as against those who represent creditors." The Court, in *Pillsbury v. Kingon*, say that in that English case "the assignment was made under the act of 1 George IV., c. 119." In none of the cases (several others of like import having been referred to) was the decision placed on any language in the statute specially empowering the assignee to avoid the fraudulent conveyances of the assignor. In fact, neither of those statutes contained any express provision for setting aside conveyances of the assignor in fraud of creditors, and that fact was unsuccessfully pressed upon the attention of the Court by the counsel who argued against the authority of the assignee to exercise that power. The capacity of the assignee to appear in Court for that purpose was, in express words, or inferentially adjudged on the ground that the assignee of the insolvent was the representative of creditors, and as such was entitled to take for their benefit the same advantage of the statute of Elizabeth as the creditors might have taken."

We are not inadvertent to the decision of this Court in *Burton v. Farinholt,* 86 N. C., 260, and we can see no difference in principle between the rights and powers of an administrator of an insolvent intestate and those of an assignee for the benefit of creditors, against the fraudulent acts of their grantors, yet we affirm the ruling made in *Bank v. Adrian, supra,* and we will in this matter take no step backward. The Legislature had, too, conferred upon executors and administrators the power to subject lands conveyed by their decedents in fraud of creditors to sale for the payment of debts before the decision in *Burton v. Farinholt, supra.* There was error in the refusal of his Honor to dismiss the action of non-suit.

Error.