ALLEN PIERSE, Plaintiff in Error, *vs.* IRVINE, STONE & McCORMICK, Defendants in Error.

Parol Evidence is admissable to prove in what capacity a party writes his name on the back of a note—whether as endorser, guarantor or surety, when the controversy is between the original parties, or to determine the mutual liability of the endorser, when there are several.

And the admission of Extrinsic Evidence, to show the real intention of the parties and to explain the real nature of the contract, is no infringement of the Statute of Frauds: although such evidence alters the *prima facie* character of the instrument.

A party who writes his name upon the back of a Note at its inception (*i. e.* before it is delivered to the payees), for the purpose of inducing the payees to take the same, or "for the purpose of guaranteeing the payment" thereof, or becoming security to

the payees for the amount thereof, is liable as an original maker.  The *facts* create the liability.

If the facts stated in a Complaint make the Defendant liable, it is unnecessary to inquire in what character his liability originated.

ERROR TO THE DISTRICT COURT OF RAMSEY COUNTY.

A. Davis made his promissory note in writing, payable to the order of Irvine, Stone & McCormick, and delivered the note to Allen Pierse, who endorsed it and re-delivered it so endorsed to Davis, who, afterwards, and before maturity, delivered it to the payees.

They bring suit upon the note against Pierse, and allege in their complaint that he endorsed the note for the purpose of " guaranteeing the payment of the same, and becoming secu-" rity to the Plaintiffs for the amount thereof: and the Plain-" tiffs, relying upon such endorsement and guaranty by the " Defendant, paid the consideration for the same to Davis."

They also allege demand, protest for non-payment, and notice of protest given to Pierse.

The Defendant Demurred to the complaint,—

Because, The Plaintiffs are the payees of the note sued upon, and the title to the note cannot be transferred to the Defendant so as to make his endorsement effectual, except by the precedent endorsement of the Plaintiffs : in which event the Defendant is the endorsee of the Plaintiffs, and no recovery can be had against him in their favor.

And because, The Defendant cannot be regarded as a guarantor of the note.  When a party writes his name in blank upon a promissory note, he only agrees that he will pay the note to the holder on receiving due notice that the maker, upon proper demand, has neglected to pay it.  The contract of the Defendant is that of an endorser, and a contract of a different kind cannot arise and will not be implied in conflict with the written agreement.

And because, The complaint, charging the Defendant as a guarantor and an endorser, improperly unites several causes of action.

The demurrer was overruled, and judgment ordered in favor of the Plaintiffs.

Pierse *v*. Irvine, Stone & McCormick.

The following are the points and authorities relied upon by the Plaintiff in Error :

*First.* The contract of the Defendant is that of an endorser: and a contract of a different character will not arise and cannot be implied in conflict with the written agreement. *Seabury vs. Hungerford,* 2 *Hill,* 80; *Hall vs. Newcombe,* 3 *Hill,* 233; *Same vs. Same,* 7 *Hill,* 416; *Spies vs. Gillmore,* 1 *Comstock,* 321; *Ellis vs. Brown,* 6 *Barb.* 282; *Hall vs. Larme, et. al.* 5 *Denio,* 484; *Same vs. Same,* 2 *Comstock,* 553; *Brewster vs. Silence,* 4 *Selden,* 207; *Jackson vs. Sill,* 11 *J. R.* 201; *Nebb vs. Rice,* 6 *Hill,* 219; *Stevens vs. Cooper,* 1 *J. Ch.* 429.  1 *Spencer, N.-J. R.* 256; *Frea vs. Dunlap,* 1 *Greene,* 331; *Jennings vs. Thomas,* 13 *Smeade & Marshall,* 617; *Taylor vs. McCune,* 1 *Jones' Penn. R.* 460. [The last four cases are also cited in *Story on Promissory Notes,* 3d edition, section 134, and *note.*]

*Second.* The contract of the Defendant being that of an endorser, he is the endorsee of the Plaintiffs, and not liable to them. *Herrick vs. Carmer,* 12 *J. R.* 160; *Tillman vs. Wheeler,* 17 *J. R.* 326; *Ellis vs. Brown,* 6 *Barb.* 282.

*Third.* Conceding that the debt may be made liable in any event, he is charged in the complaint as a guarantor; and the complaint, showing his engagement—whatever it may have been—to have been contemporaneous with the inception of the note, he is liable as an original promissor, and not guarantor.

*Fourth.* Conceding the Defendant's liability under any state of facts, the complaint does not aver facts sufficient to charge him.

*Fifth.* Distinct causes of action [are improperly united in the same count. *Rev. Stat. p.* 340, *sec.* 7; 2 *Code Rep.* 145; 4 *H. P. R.* 226; 5 *ib.* 172; 7 *Barb.* 80.

The points and authorities relied upon by the Defendants in Error are as follows :

The Defendant is not an endorser of the note on which the action is brought, in the legal acceptation of the term, but is a guarantor.

Such an endorsement as that made by the Defendant is a guaranty. *Campbell vs. Butler,* 14 *Johns. R. p.* 35; *Labron & Ives vs. Woram,* 1 *Hill's Rep.* 91; *Herrick vs. Carmer,* 12

*Johns.* 159; *Nelson vs. Dubois,* 13 *Johns. R.* 175; *Hall vs.. Newcombe,* 3 *Hill,* 333—(*Opinion of* NELSON, *Ch. J.*)

The note is not, properly speaking, negotiable, and therefore the Defendant *cannot* be made an *endorser,* according to mercantile usage. *Dean vs. Hall,* 17 *Wendell,* 214.

If the Defendant is a guarantor he cannot object to the complaint, for the reason that demand and notice is not sufficiently alleged. *Brown vs. Curtis,* 2 *Comst.* 225; *Allen vs. Righten-mere,* 20 *Johns.* 365.

But even if the Defendant were an ordinary endorser the third ground of demurrer would not be tenable. The absconding of the *maker* and the use of due diligence are sufficient to excuse a demand. *Stewart vs. Eden,* 2 *Caines,* 121; *Galpin vs. Hard,* 3 *McCord,* 374; *Union Bank vs. Magruder,* 7 *Peters,* 287.

Several causes of action have been improperly united. *R. S. sec.* 61, *chap.* 70; *ibid, sec.* 83, *chap.* 70.

If any portion of the complaint is not in comformity with the Statute, because double, indefinite or uncertain, the remedy of the party defendant was by motion to strike out and not by demurrer. *Amendm'ts Rev. Stat's. p.* 9; *Weller's Exe'rs vs. Webster,* 9 *How.* 251.

Duplicity cannot be taken advantage of on demurrer. *Benedict vs. Seymour,* 6 *How.* 298; *Rev. Stat's. Minnesota, p.* 341; *Howell vs. Frazer, Code Rep.* (*N. S.*) *vol.* 1, *p.* 271; *Van Sant. Pl.* 175, 176, 181, *and cases there cited;* 9 *Howard,* 251.

WILKINSON, BABCOCK & BRISBIN, Counsel for Plaintiff in Error.

HOLLINSHEAD. & BECKER, Counsel for Defendants in Error.

*By the Court.*—SHERBURNE, J.   Demurrer to the complaint. On the 29th day of December, 1854, one A. Davis made his promissory note for the sum of four hundred dollars, payable to the Defendants in Error in ten days. This note, on the same day, and before delivery of the same to the Defendants, was endorsed by the Plaintiff in Error, by writing his name on the back thereof. And the complaint alleges " that he so endorsed

" said note for the purpose of guaranteeing the payment of the " same, and becoming security to the Plaintiffs (Defendants in " Error) for the amount thereof; and the Plaintiffs, relying " upon such endorsement and guaranty by the Defendant, paid " the consideration for said note to the said A. Davis." The complaint also alleges that, on the day on which the note matured, the Defendant (said Pierse), in writing on the back of said note, waived a demand on the maker and notice to him.

Is the endorser liable to the payees? The first question which I shall consider is: Whether it is competent to prove the purpose and intention of Pierse in endorsing the note, as understood by himself and the maker and payees. If it is competent to prove it, the fact is admitted by the demurrer: but if it is not competent, then the object and intention of the endorsing is not well pleaded, and therefore not admitted.

Ordinary commercial paper, in the hands of innocent endorsees, must be controlled as between the endorsees and original parties, by what is written; but to determine the mutual liability of the endorsers where there are several, it becomes often necessary to resort to extrinsic evidence—especially as to the priority of the endorsements. So, between the original parties, it is every-day's practice to prove facts effecting their rights; and this is done upon the question of consideration, though the evidence contradicts the tenor of the note. Take for example the various positions in which the parties might be placed in a case like this. Pierse signed his name, as he admits, to enable Davis to raise money from Irvine and others. They advanced their money upon the credit of his name. As to the equitable rights and obligations of the parties, then, there can be no question. Suppose the payees had afterwards endorsed the note, and their endorsee had collected it of Pierse, how would the case stand in an action by Pierse against the payees, to recover back the money paid? This is reversing the parties, but not the facts or principle involved; and yet to permit him to sustain his action upon such a statement would result in the violation of the original agreement and in reversing the real rights and obligations of the parties.

Suppose, again, that the name of Pierse had been written upon the note, at the request of the payees, after the same had

passed into their hands, for the purpose of giving them credit in the market, and they had brought this action without endorsing it.   If he could not prove these facts, he would, according to the majority of the decisions, be subject to a gross fraud, and without any possible remedy : for, the better opinion seems to be, as will be seen hereafter, that, although a transaction like the one under consideration is always open to explanation, yet *prima facie*, the blank endorser is an original maker.

Suppose, again, that the entire transaction was for the benefit of Pierse, and that he received the whole amount of the note : —Can this fact be proved, or must he still be treated as second endorser, as he now contends ?   The statement of the question demonstrates its absurdity.

If this were the first time a court had been called upon to settle the questions involved in this controversy, my impression is that there would be so much doubt as to the intention of the parties that a court could not hesitate a moment in admitting testimony to explain it.   It would presume that the name on the back of the note created a liability on the part of him whose name is there written, in a case like this : but to whom and for whom, in the absence of judicial decision, might well be a subject of doubt, and, at most, the name could only furnish *prima facie* evidence.   The circumstances, therefore, under which it was written—the time when, at whose request, and for whose benefit—become material in arriving at the real intention of the parties and nature of the contract.

The Statute of Frauds does not affect a question of this character.   The Chancellor, in the case of *Hall vs. Newcombe*, 7 *Hill's Reports*, 418, says :   " The Courts have gone far enough " in repealing the statute to prevent frauds and perjuries, by in- " troducing parol evidence to charge a mere surety for the prin- " cipal debtor by showing that his written agreement 'means " something else than what upon the face it purports to mean." In this case, because " courts have gone far enough," the Chancellor goes back over a well-beaten track, and reverses all they have done.   It is also assumed that the contract, as shown by the note, is that of a second endorser.   No force of reasoning can prove this to be true.   There is nothing in the case to show that the contract was not completed without the endorsement

of the payees.   But it will be seen hereafter that in this very case the Chancellor impliedly admits that, in another way, the intention may be shown by extrinsic evidence.

But the subject has been too often adjudicated to be called in question at this late day.   It would seem that if a uniformity of judicial decisions both in this country and in England, during the last forty years, has not quieted this question, there can be no hope of ever accomplishing such an end.   In the following cases it was held, either directly or by necessary implication, that parol evidence could be introduced to explain the nature of a contract like the one under consideration:—
*Moies vs. Bird,* 11 *Mass. R.* 436 ; *Sumner vs. Gay,* 4 *Pick. R.* 311 ; *Baker vs. Briggs,* 8 *id.* 122 ; *Chaffee vs. Jones et. al.* 19 *id.* 260 ; *Austin vs. Boyd,* 24 *id.* 64 ; *Josselyn vs. Ames,* 3 *Mass. R.* 274 ; *Sampson vs. Thornton,* 3 *Met. R.* 275 ; *Hunt vs. Adams,* 5 *Mass. R.* 362 ; *Powell vs. Thomas,* 7 *Mo. R.* 440 ; *Lewis et. al. vs. Harvey et. al.* 18 *Mo. R.* 14 ; *Colburn vs. Averill,* 30 *Maine R.* 317 ; *Irish vs. Cutter,* 31 *id.* 536 ; *Adams vs. Hardy,* 32 *id.* 339 ; *Beckwith vs. Angell,* 6 *Conn. R.* 315 ; *Laflin vs. Pomroy,* 11 *id.* 444 ; *Flint vs. Day,* 9 *Verm. R.* 345 ; *Nash vs. Skinner,* 12 *id.* 219 ; *Story vs. Pike,* 16 *id.* 554 ; *Sampson vs. Norton,* 17 *id.* 285 ; *Milton vs. De-Yampert,* 3 *Ala. R.* 648 ; *Jordan vs. Garnett, id.* 610 ; *Champion vs. Griffith,* 13 *Ohio R.* 225 ; 9 *id.* 39 ; 4 *Watts,* 448 ; *Story vs. Bearbane,* 2 *McMullin's R.* 313 ; 1 *Nott & McCord's R.* 129 ; 2 *McCord's R.* 338 ; 13 *Ill. R.* 682 ; *Martin vs. Boyd,* 11 *N.-H. R.* 385 ; 2 *La. R.* 248 ; 2 *Mich. R.* 555 ; *Crozier vs. Chambers,* 1 *Spencer,* 256 ; *Violett vs. Potton,* 5 *Cranch,* 142.

The earlier decisions of New-York were to the same effect. See *Herrick vs. Carmer,* 12 *John. Rep.* 159 ; *Nelson vs. Dubois,* 13 *id.* 175 ; *Campbell vs. Butler,* 14 *id.* 349 ; *Tillman vs. Wheeler,* 17 *id.* 326 ; *Prosser vs. Lugneer,* 4 *Hill,* 420 ; *Hoag vs. Strong,* 5 *Wendell,* 601.

Latterly, however, the Courts of that State have inclined to hold a party in the situation of the Plaintiff in Error as endorser only, and not as original maker or guarantor.   See *Hall vs. Newcombe,* 7 *Hill's R.* 418 ; *Ellis vs. Brown,* 6 *Barb. R.* 282.   But even in these cases it is difficult to see

how the reasoning of the Court can be consistent with itself upon any other principle than that of permitting the introduction of testimony to explain the transaction. The Courts, in commenting upon these cases, say, in substance, that if the original payees of the note had endorsed it to a third party, without recourse to them, it would have been available to them, because the endorsee might have recovered it of the party who put his name upon the back of the note at the time it was made. But the argument is, that he stands in the place of a second endorser, and is liable only as such. If this be so, then, immediately upon his paying the amount of the note to his endorsee, he would have a legal demand for the same upon the payees. What would be their defence? If there could be any defence under the decisions above cited, it would be, of course, that they had endorsed "without recourse." But the Plaintiff in Error being, as it is said, only second endorser, and only liable as such, the payees had no right to make a restricted endorsement, and he may prove that none such was made when he wrote his own name. The restricted endorsement would be a fraud upon him, if there were no other facts in the case: and that he might prove such fraud is too evident to admit of a doubt. There must be one step more taken upon the trial. The payees must prove that when the endorser put his name upon the note it had not come into their hands, but he put it there as surety for the maker, and that they took it with that understanding. If I understand the last two cases cited, the original intention of the parties may be carried out by following this circuitous path, but cannot in a plain, simple, direct action between the original parties. They do, however, sustain the uniform doctrine that, in some form, extrinsic evidence may be admitted to enable the Court to adjust the rights of the parties according to their original intention.

It seems to me, therefore, to be as well settled as any principle of law can be, that it would be competent for the original Plaintiffs to prove all they have alleged in their complaint. It is therefore admitted by the demurrer.

One great cause of the numerous litigated suits which have grown out of this subject has been—not that the endorser was not holden at all, but the diversity of opinion among the courts

as to the character in which he was holden.  The prevailing doctrine is, that he is holden as original maker and surety for the promissor in the note, and therefore not entitled to the notice of a commercial endorser.  See *Austin vs. Boyd*, and *Lewis vs. Harvey*, above cited.

In the earlier decisions of New-York, he was held as guarantor.  See *Campbell vs. Butler*, 14 *John. Rep.* 349 ; *Nelson vs. Dubois*, *id.* 75.  A few similar decisions are found in other States.

Others hold that he is only an endorser, and as such is entitled to be thus treated, but, upon the usual demand and notice, is liable directly to the payee of the note.  *Spies vs. Gilmore*, 1 *Conn.* 321 ; *Seabury vs. Hungerford*, 2 *Hill's Rep.* 80.  But in this case the note was made payable to the plaintiff or bearer, which may have been supposed to distinguish it from others.  The distinction, however, if there is any, lies more in form than in substance.

But under our form of pleading it is unimportant in what character the plaintiff may be liable, if he is liable at all.  The old forms and distinctions are abolished, and the plaintiff is required to allege in his complaint " a statement of the facts " constituting the cause of action, in ordinary and concise lan- " guage, without repetition, and in such a manner as to enable " a person of common understanding to know what is intended ;" also, " a demand of the relief to which the plaintiff supposes himself entitled."  (See *Revised Statutes*, section 60, page 337.)  If the facts, then, which are stated in the complaint and admitted by the demurrer make the Plaintiff in Error liable to the Defendants, it is unnecessary to inquire in what character his liability originated.  It would seem, however, that the reason of the case makes him liable as original promissor.  His name is written at the inception of the note and before delivery.  The object and purpose is to give the maker or principal credit with the promissees or payees.  He writes his name at the same time and for the same purpose that he would have written it upon the face of the note as surety.  Why should he be not so held ?  If his name had not been written until after the delivery of the note to the payees, and they had parted with their money, the act would have been void by the

Statute of Frauds. If, at that time, the promise and consideration had been in writing, it would have been a guaranty. But he now stands in no relation of guarantor. He is privy to the original consideration, and may for that reason be held as surety without resort to any ingenious and artificial expedients, if he is liable at all. See *Sampson vs. Thornton,* 3 *Met. Rep.* 279; *Irish vs. Cutter,* 31 *Red. Rep.* 536; *Colburn vs. Averill,* 30 *Maine Rep.* 317. There is not one fact in the case making him technically a commercial endorser, and it is unnecessary to speak of him as presenting that character. It is sufficient to say that the general tenor of the authorities of this country holding him liable in any event maintain that he is an original party to the note and liable as maker. This seems to me to be the correct doctrine. It can only be material when there is a want of demand and notice, which in this case are waived.

But there have been two or three late decisions in New-York which seem to sustain the view of the Plaintiff in Error, and to hold that in no event can he be liable in an action by the payees—*Ellis vs. Brown,* and *Hall vs. Newcomb, supra.*

The reasoning of the Courts in these cases proceeds upon the ground that the note itself shows *prima facie* that the original Defendant is a second endorser, and that to hold him as maker is to change the contract made by the parties into one made by the Court. But upon what ground can it be said that Pierse appears upon the note as second endorser? The presumption of law is that his name was written there at the inception of the note. (See 30 *Maine Rep. supra,* and cases there cited.) In this form it goes into the hands of the payees for a full consideration; they hold it till maturity and bring their action. It is certainly not very apparent how, under such facts, the payees can be made to stand in the place of the first endorsers. The note contradicts it, because they have not endorsed it—it contradicts it because they still hold it, and also because the name of Pierse was written at the inception. If it was not then written that fact may be denied, but in this case it is admitted.

The admission of parol evidence is not to enable the Court to make a contract different from that made by the parties,

but to explain to the Court the nature of the contract which the parties really did make. Pierse admits that he endorsed the note for the purpose of being surety for its payment to the payees: and yet the ruling in the case of *Ellis vs. Brown* will change that contract, admitted upon the record, and make Pierse liable only for the responsibility of the payees. This is making "judicial contracts" with a vengeance. This kind of paper is not new, and, judging from the reported cases, it must be in very common use. Two other causes are disposed of with this, involving a large amount.* The intention of the parties is in each case admitted by the pleadings. It is apparent and beyond all question that in each case the endorser considered his name as good to the promissee. But the late decisions of New-York which are referred to are invoked to relieve them of the responsibility which they assumed with a full knowledge of its extent, and to take from the payees, probably, the only names on which they had in good faith advanced their money. And yet one ground of these decisions, as before stated, is that Courts should not make contracts for the parties, but leave them as the parties intended. The principle is good, but the application destroys it. The one is inconsistent with the other. It has already been seen that even in these cases the courts do not hold the contract and intention of the parties as entirely void, but admit that the note may be made available by the payees if they will but endorse it without recourse. This admission undermines the entire foundation upon which the decisions rest. The decisions are based principally, as already stated, upon the assumed position that by the terms of the note the original Defendant (applying the decisions to this case) was holden only as second endorser, and the Court would not make a "judicial contract." And yet the Court suggests the above roundabout process of endorsing without recourse by which the endorser may be compelled to carry out the original understanding of the parties.

Whether these cases are supported by sound reasoning or not, they are insufficient to overturn the common-law of the land. Immense interests are involved in the question, and no

---

* WILLIAM R. MARSHALL, ET. AL. Plaintiffs in Error, *vs.* JAMES W. SIMPSON. JAMES M. WINSLOW, Plaintiff in Error, *vs.* BOYDEN & WILLARD.

change should be made which will impair them. It is the duty of courts to determine what the law is, and not what they may please to have it. A legislature could change it, and make it prospective only; a court has no such power, and should never reverse a well-settled principle of law in which the interests of the people may be largely involved. As it now stands, the intention of the parties will prevail.

Judgment below affirmed.