FIRST NATIONAL BANK OF WINSTON v. T. H. PEGRAM, Jr., et al.

*Action on Note—Negotiable Instruments—Endorsement— Liability of Endorser—Parol Evidence of Agreement Limiting Liability of Endorser.*

1. Parol testimony may be adduced under a blank endorsement to annex a qualification or special contract as between immediate parties; but between an endorser in blank and remote parties without notice such parol proof is inadmissible, and the contract implied by law stands absolute.

2. In the trial of an action by a Bank against the endorser of a note given in renewal of a former note on which the defendant was also endorser, the latter may show, as against the payee, that at the time he signed such renewal the cashier of plaintiff informed him that the Bank had sufficient funds of the maker to pay such renewal note, that its execution was a matter of form necessary to keep the Bank accounts straight, and that the Bank would not hold him liable thereon.

CIVIL ACTION, tried at January, Special Term, 1896, of FORSYTH Superior Court, before *Brown*, *J.*, and a jury. There was judgment for the defendant, T. H. Pegram, Sr., (surety,) and plaintiff appealed. The material facts are stated by Associate Justice MONTGOMERY.

*Messrs. Watson & Buxton*, and *Jones & Patterson*, for plaintiff (appellant).

*Messrs. Glenn & Manly* and *A. E. Holton*, for defendant.

MONTGOMERY, J.: This action was brought to recover the amount alleged to be due on a note executed by the defendant, T. H. Pegram, Jr., to L. W. Pegram and T. H. Pegram, and by the payees endorsed to the plaintiff. The

defendant, T. H. Pegram, in his answer admitted the execution of the note, but averred that when Alspaugh, cashier of the plaintiff Bank, requested him to renew the old note, he at first refused to do so, but on being told by Alspaugh that there was in the Bank a fund which had been deposited by the assignee of the principal of the note, the defendant, T. H. Pegram, Jr., sufficient to pay the note in full, but that the matters had not been fully arranged, and that it was necessary to renew the note to keep the Bank matters straight, and that he would incur no liability on the note, he signed the same as surety. He further averred that he had since learned that that statement was untrue, and that there was a large balance due on said note to the plaintiff, and that the defendant was fraudulently induced to sign the note, thinking that from the statement made to him it was only an accommodation to the plaintiff, and that he would suffer no liability. Other defenses were set up by the defendants, L. W. Pegram and T. H. Pegram, (T. H. Pegram, Jr., did not answer,) but it will not be necessary to notice them, as they were not supported by testimony. The plaintiff tendered the following issues, which his Honor declined to give, and an exception was entered :

" 1. Was defendant, T. H. Pegram, Sr., induced to sign the note sued on by the false and fraudulent representations of the cashier of plaintiff Bank ?

" 2. Did the cashier, with a fraudulent intent, represent to defendant, T. H. Pegram, Sr., that his signing was a mere form, and that it would in no way make said defendant liable on the note ?"

In their stead the following were submitted to the jury____:

" 2. At the time of execution of the renewal note sued on, did Alspaugh, cashier of plaintiff Bank, represent and state to T. H. Pegram, Sr., that there was enough money on

deposit in the Bank to pay this note, and that his signing it was a mere form, and that the Bank would not hold him (Pegram, Sr.) liable for it? Ans, 'Yes.'"

The defendants, T. H. Pegram and L. W. Pegram, testified to the alleged conversation between Alspaugh and T. H. Pegram at the time of the execution of the note, and Alspaugh denied that part of the conversation which concerned the plaintiff's exemption from liability on the note. His Honor was right in refusing to submit the issues tendered by the plaintiff and to instruct the jury as the plaintiff requested. If it was lawful for the defendant, T. H. Pegram, to give in evidence the conversation which he alleged he had with Alspaugh, the cashier of the Bank, at the time of the execution of the note, for the purpose of proving that he was not liable on the note, it was not necessary that the intent of Alspaugh should have been fraudulent or that his representations should have been false to his knowledge. It was not a question of fraud which was to be tried, but the question whether or not oral testimony could be allowed to explain and to change the effect of the defendant's endorsement of the note. But the plaintiff insists that in no aspect of the case ought the defendant to be exempted from liability, even if the conversation did occur as related by him, because it would have been an easy matter for him to have found out that there was no money in Bank applicable to the payment of the note, by further inquiry, and by an examination of the deed of trust made by the defendant, T. H. Pegram, Jr., which was a matter of record. The answer to that is not difficult. The statement of the cashier relieved him of the duty of any further inquiry in that direction as to whether there were any funds in Bank to be applied to this note; and the fact that the deed of trust showed other preferred creditors besides T. H. Pegram had no tendency to

118—43

show whether or not the assignee had deposited in Bank money, the proceeds of the assets of the debtor. The plaintiff further contends that if the defendant, T. H. Pegram, is held liable for the payment of the note he will not be damaged any way, because he was liable on the old note when he executed the renewal one, upon which he is sued. It is true that he was liable on the old note, but he had the undoubted right to bring this liability to a culmination. He had the right to prefer that time, the time when he was asked to renew the note, as the best time for him to have the Bank take what legal steps it chose for the collection of the note. For reasons of his own he chose to end his renewals of the note and to take the consequence ; most probably he thought such refusal would hurry up the application of the funds which the assignee of T. H. Pegram, Jr., (the principal debtor,) had deposited in the bank, for he said in his testimony that he thought the debt had already been paid, and that the renewal preceding the last was nearly three years before the last.

The question then is, Could the defendant by parol evidence prove the representations made by the plaintiff through its cashier and agent, Alspaugh, at the time the note sued on was executed ? In Section 723 of the first volume of Daniel on Negotiable Instruments, the author writes : " The cases prohibiting the introduction of parol evidence to vary the contract, implied in an endorsement, are in direct conflict with others._____It would be useless to attempt to reconcile the authorities on the subject In North Carolina, however, the matter is settled that parol testimony is admissible to prove such representations. In *Mendenhall* v. *Davis*, 72 N. C., 150, where an immediate endorsee sued the endorser on a bond, this Court held that the rule which governs between an endorser of a negotiable note and a subsequent *bona fide* holder for value (where

the law implies that the endorser intended to assume the well-known liabilities of an endorser, and will not be permitted to contradict the implication) did not apply between the original parties to the endorsement; but that in the latter case the agreement between the parties at the time the endorsement was written could be proved by parol. In *Hill* v. *Shields*, 81 N. C., 251, DILLARD, J., in delivering the opinion of the Court, said : " It is settled in this State, however, that parol testimony may be adduced under a blank endorsement to annex a qualification or special contract as between immediate parties. But between endorser in blank and remote parties, without notice, the weight of authority is that parol proof is admissible, and the contract implied by law stands absolute." Lest it might be taken that the opinion of the Court in the last case had reference only to an explanation by parol, was to be confined to whether the endorsement was made either as guarantor or original promissor or endorser, and not to proving entire exemption from liability, the Judge went on to say : " In treating of this subject, Daniel, in his work on Negotiable Instruments, says a parol agreement in the endorsement of a note to the effect that the transfer should be *without recourse* on the endorser, can not be interposed as a defense against a subsequent *bona fide* holder without notice." In *Davidson* v. *Powell*, 114 N. C., 575, Section 50 of *The Code* is cited, and MACRAE, J., said : " In the hands of the original payee, an endorsement may be shown to be upon certain conditions; but a *bona fide* holder for value, before maturity and without notice, is not affected by equities existing between the original parties." In *Bruce* v. *Wright*, 10 N. Y., 548, it was held that in an action against any endorser by his immediate endorsee, it is a good defense that there was a verbal agreement at the time of the endorsement that the endor-

BANK *v.* PEGRAM.

see should not sue the endorser; and that " the contract between the two consists partly in the written endorsement, partly in the delivery of the bill to the endorsee, and partly in the actual understanding and intention with which the delivery was made.........and that the intention of the parties may be gathered from the words of the parties, either spoken or written." To the same effect is *Benton* v. *Martin,* 52 N. Y., 570. No question was raised below as to the power of Alspaugh, the cashier, to make the agreement alleged by the defendant, and found by the jury to have been made with him, at the time of the endorsement. The evidence offered to prove the agreement was not objected to by the plaintiff, and no instructions were asked from the court on this point, and the issues tendered by the plaintiff impliedly admitted the authority of Alspaugh to make it. The objections to other of the evidence of the defendant, made by the plaintiff, are untenable.

There was no error in the rulings of the court below.

No Error.