SYKES AND CLEMENTS, TRUSTEES, v. R. O. EVERETT.

(Filed 25 November, 1914.)

1. Appeal and Error—Objections and Exceptions—Parol Evidence—Written Contracts.

The rule that parol evidence is inadmissible to vary or contradict a written instrument, etc., must be invoked in some proper way; and it is not available to the party relying thereon when he is not the appellant in the action.

2. Bills and Notes—Indorsement in Blank—Parol Agreements—Statute of Frauds—Evidence—Holders in Due Course.

A parol agreement made between an indorser of a negotiable instrument in blank and his transferee may be shown between the immediate parties to the transaction by parol evidence, and is not objectionable as a contradiction of the liability of an indorser implied by law, except as to subsequent holders in due course without notice.

3. Same—Notice—Assignment for Creditors—Trusts and Trustees.

A trustee in a general assignment for the benefit of the trustor's creditors acquires a negotiable instrument, belonging to his trustor, indorsed to him in blank and upon which the indorser is liable under certain conditions resting in parol, with notice of the qualifications under which the indorser has signed; certainly when he acquired them, as such trustee, after maturity.

**4. Same—Guarantors of Collection—Liability.**

The defendant, the holder of certain notes secured by the assignment of the interest of the maker in an unsettled estate, assigned them in blank for a valuable consideration to the plaintiffs upon the parol agreement that if the maker did not pay them and the money was not realized ˙on the assignment of his interest in the estate, the defendant would be ultimately responsible for their payment, and that the defendant would not be called on to make payment until the estate had ˙been exhausted, promising to employ attorneys, etc., in certain events, which he fully performed. Thereafter the plaintiffs acquired the notes from the defendant's transferee in a general assignment for the benefit of the latter's creditors. *Held,* (1) the trustees under the deed of assignment took subject to the defendant's rights under the agreement with their trustor; (2) the defendant's rights being analogous to a guarantor of collection, it was necessary for the plaintiffs to show that the security given for the notes sued on was worthless, or had been first exhausted, in order to bind the defendant to their payment under the terms of the agreement; and failing in this, the action will be dismissed.

**5. Bills and Notes—Indorsement in Blank—Parol Agreements—Consideration—Time of Payment—Expression of Opinion—Fraud.**

Where a parol agreement between the˙indorser and indorsee of a negotiable instrument in blank is that the indorsee shall first exhaust certain securities given with the note before the˙ indorser shall become liable thereon, the securities consisting in the interest of the maker of the note in certain unsettled estates, the agreement is founded upon a sufficient consideration, the time within which the indorser's liability should attach being as definite as it could have been made; and the representations made by the indorser in this case, when the agreement was made, as to the time wherein the estate would be settled, was merely an expression of his opinion or expectation, and is held to raise no suspicion of fraud and to be immaterial.

APPEAL by defendant from *Lyon, J.,* at May Term, 1914, of DURHAM.

This action was brought to recover the sum of $10,144.50, as due upon four several notes indorsed in blank by the defendant. The case was referred to Hon. Howard A. Foushee, who made his report, in which, after finding the facts and stating his conclusions of law therefrom, recommended that judgment be rendered in favor of the plaintiffs, and against the defendants, for $10,144.50, the amount due on the notes, with interest on $7,144.50 from 20 March, 1911, and on $3,000 from 8 April, 1911, until paid, together with the costs of the action; and further recommended that no execution be issued on said judgment until 1 May, 1915, and that the three F. A. Moore notes, and the assignment from him securing the same, and the Louis Moore note with the assignment securing the same, should all be delivered by the said trustee to the clerk of the Superior Court of Durham County, State of North Carolina, to be held by him until such time as said R. O. Everett pays said judgment, at which time the same shall be delivered to him. Defendant excepted to the conclusions of law of the referee.

The material facts are as follows:

On 20 March, 1911, F. A. Moore executed and delivered to the defendant R. O. Everett three demand notes aggregating $7,144.50, and the same are set out in the record. As stated, the notes were payable on demand and were secured by an assignment of an interest of F. A. Moore in his share and portion of the estate of John Annin of New York City. This assignment, which was deposited with R. O. Everett as collateral for the payment of said notes, in addition to transferring and assigning an interest to secure said notes, constituted and appointed the defendant R. O. Everett, or any person whom he might substitute, as his lawful attorney to collect said interest in said estate and apply the same to the discharge of said indebtedness.

On 8 April, 1911, Louis Moore executed and delivered to R. O. Everett and G. C. Farthing his promissory note for $3,000, payable on 1 September, 1911, and to secure said indebtedness transferred and assigned to R. O. Everett an interest in the estate of John Annin, and appointed R. O. Everett, or any person whom he might substitute, as attorney to collect the same and discharge said indebtedness. The Louis Moore note and the assignment appear in the record. On or about 11 April, 1911, R. O. Everett, by indorsement, duly transferred and delivered to G. C. Farthing, for valuable consideration, the four notes above referred to, together with his interest in said assignments (which were given as collateral therefor. At the time these four notes were so indorsed and transferred to G. C. Farthing there was an agreement between R. O. Everett and G. C. Farthing that if F. A. Moore and Louis Moore did not pay and the money was not realized on the assignments of their interest in the Annin estate, R. O. Everett would be ultimately responsible for the payment of said notes, but he would not be called upon to pay the same until the estate of John Annin had been exhausted. G. C. Farthing held the notes so indorsed to him from 11 April, 1911, until 23 August, 1912, when the said Farthing executed and delivered to R. H. Sykes and W. P. Clements, trustees, a deed of trust conveying his property to them, and, among other things, all the right, title, and interest of G. C. Farthing in and to the above described notes and collateral assignments, and on said date the trustees took possession of said papers and retained them until the commencement of this action. Said trustees of G. C. Farthing made demand upon F. A. Moore and Louis Moore, but they failed to pay said notes, and the estate of John Annin has not been wound up. Demand was then made by the plaintiffs, Sykes and Clements, trustees, upon R. O. Everett for payment, and he declined to pay, upon the ground that he was not liable until the Annin estate had been exhausted.

The referee made the following findings of fact, among others:

7. That at the time said three F. A. Moore notes were indorsed to G. C. Farthing, towit, 11 April, 1911, it was done upon an agreement between R. O. Everett and G. C. Farthing that he would be ultimately responsible for the payment of said notes, but that he (Everett) would not pay the same until the estate of John Annin had been exhausted. In the event there was any trouble about the collection of said notes, that he (Everett) would procure and pay for the services of an attorney and that he (Everett) would hold Farthing harmless against the cost and expenses of any litigation incident to the collection of said notes. That Farthing did not know anything about the Annin estate, and that Everett told Farthing he had been to New York and he expected the same to be closed up in sixty or ninety days, and that the notes were perfectly good. That Farthing relied upon the representations of R. O. Everett and took over said notes without investigation.

9. That at the time said Louis Moore note was transferred to G. C. Farthing, as aforesaid, towit, 16 April, 1911, it was agreed between Farthing and Everett that he (Everett) would be ultimately responsible for the full face value of said note, but that Farthing should not call on him to pay the same until the collateral was exhausted, and that if any attorney was needed to collect the Louis Moore note, that he (Everett) would pay the expenses of same, and that Farthing should be held harmless by reason of any litigation concerning the same.

10. That said estate of John Annin has not been wound up; that R. O. Everett has employed counsel and has made repeated trips to New York to see said attorneys and to expedite the winding up of said estate of John Annin, but so far the end is not in sight, and no one knows when the suits incident to the winding up of said estate will be ended.

The exceptions coming on to be heard before Judge C. C. Lyon, the following judgment was entered thereon:

"This cause coming on now to be heard upon the report of Hon. H. A. Foushee, referee, and the exception filed thereto by the defendant, after hearing argument of counsel, it is ordered, considered, and adjudged that the report of the referee be and the same is hereby in all respects confirmed; and it is further ordered, considered, and adjudged, in accordance with said report, that the plaintiffs R. H. Sykes and W. P. Clements, trustees of G. C. Farthing, as such trustees, recover of the defendant R. O. Everett the sum of $10,144.50, with interest on $7,144.50 from 20 March, 1911, until paid, and with interest on $3,000 from 8 April, 1911, until paid, together with the cost of this action, to be taxed by the clerk of this court; and, in accordance with said report, that no execution issue on this judgment until 1 May, 1915. It is further adjudged that the three F. A. Moore notes, as set out and described in the report of said referee, together with the assignment securing the

same and the Louis Moore note, as set out and described in the report of said referee, together with the assignment securing the same, should all be delivered by said trustees to the clerk of the Superior Court of Durham County, N. C., to be held by him until such time as the said R. O. Everett pays this judgment, at which time the said notes and assignments shall be delivered to the said R. O. Everett."

From this judgment defendant appealed to this Court.

*P. C. Graham for plaintiffs.*
*Bryant & Brogden and Winston & Biggs for defendant.*

WALKER, J., after stating the case: The larger part of the argument before us was taken up with a full discussion of the question whether a blank indorsement by the payee, or one of the payees, to a third party can be explained by oral evidence showing what the special contract between them was, and that it was different from the one implied by law from the mere indorsement of the paper. This is a question of evidence, and the admission of the oral proof could only be incompetent on the ground that it would vary, alter, or contradict the terms of a contract which the parties have reduced to writing as the only expression of their agreement, and would violate the general rule of evidence prohibiting the introduction of such evidence. But there was no exception to the evidence, as there should have been, if that rule was relied upon; but the evidence was admitted without any objection, so far as appears, and the referee found the facts in regard to the special contract. Besides, if plaintiffs had objected, they have not appealed, and the exception to the admission of the evidence would not now be open to them.

But waiving, for the present, this view of the record, and considering the other question argued, we are of the opinion that, by our decisions, although there is some conflict in other States, the evidence is competent. In *Mendenhall v. Davis,* 72 N. C., 150, this Court, after stating that when a payee or regular indorsee thereof writes his name on the back of a note, as between him and a *bona fide* holder for value and without notice the law implies that he intended to assume the well-known liability of an indorser, and he will not be permitted to contradict this implication; "but this rule does not apply between the original parties to a contract which is not in writing, although there may be the signature of one or more parties to authenticate that *some* contract was made. In such cases it must always be a question of fact what contract the signature authorizes to be written above it; in other words, what was the agreement of the parties at the time it was written. There is no written contract to be altered; the whole (except the signature, which by itself does not make a contract) exists in parol, and must be established by such proof." The Court then proceeds to say that the presumption that one

SYKES *v.* EVERETT.

who indorses a note after its delivery by the maker is a guarantor (under the law as it then existed), is not one of law, but one of fact only, and may be rebutted; so that it does not affect injuriously the right of a subsequent *bona fide* holder. Several cases are cited to support the position, in which the rule was applied. *Love v. Wall,* 8 N. C., 313; *Gomez v. Lazarus,* 16 N. C., 205; *Davis v. Morgan,* 64 N. C., 570, and *Sylvester v. Downer,* 20 Vt., 855, where *Judge Redfield* said that in the particular case there was a legal implication "that the indorser was a joint promisor, but the signature being blank, he may *undoubtedly* show that he was not understood to assume any such obligation"; and to the same effect are these cases: *Clapp v. Rice,* 13 Gray (Mass.), 403; *Perkins v. Catlin,* 11 Conn., 213; 2 Parsons Bills and Notes, p. 121 and notes (and Ed. of 1871, p. 517), where numerous like cases will be found. This doctrine is so firmly established by a long series of decisions in this State that it is far too late now to question it, as will presently appear. In the more recent case of *Hill v. Shields,* 81 N. C., 250, *Justice Dillard,* who was always careful and accurate in the statement of legal principles, said: "The indorsement being in blank, and the contract implied by law with his indorsee and subsequent holders, giving such unqualified power to dispose of the same, as we have seen, it has been much debated and variously decided as to the competency of the indorser, by parol proof, to rebut the implication of the law, and to annex a qualification when none is expressed. It is settled in this State, however, that parol testimony may be adduced under a blank indorsement to annex a qualification or special contract as between the immediate parties. *Davis v. Morgan,* 64 N. C., 570; *Mendenhall v. Davis,* 72 N. C., 150. But between an indorser in blank and remote parties without notice the weight of authority is that parol proof is inadmissible, and the contract implied by law stands absolute. 2 Parsons, 23; *Hill v. Ely,* 1 Serg. and Rawle, 362; 1 Daniel on Neg. Inst., secs. 699 and 719." The following cases recognized and applied the principle in a general way: *Comrs. v. Wasson,* 82 N. C., 309; *Adrian v. McCaskill,* 103 N. C., 186; *Cobb v. Clegg,* 137 N. C., 153; *Typewriter Co. v. Hardware Co.,* 143 N. C., 97; *Woodson v. Beck,* 151 N. C., 148.

Two cases, which are apparently relied on by appellee, should be noticed. *Davidson v. Powell,* 114 N. C., 575, is one; but a close reading of that case will show that it is a clear authority in support of our view, as *Justice MacRae,* in the opinion written by him for the Court, says: "In the hands of an original payee an indorsement may be shown to be upon certain conditions; but a *bona fide* holder for value before maturity and without notice is not affected by any equities existing between the original parties. The same rule will apply between the last payee and all subsequent indorsers."

The other case is *Bank v. Pegram,* 118 N. C., 671. This is a still stronger case, as there it was proposed to show by parol evidence that the cashier of the plaintiff bank had informed the indorsee that the maker had sufficient funds in the bank to pay the note, and that he would not be held responsible upon it, his signature on the back of the note being a mere form. The first syllabus of the case is this: "Parol testimony may be adduced under a blank indorsement to annex a qualification or special contract as between immediate parties; but between an indorser in blank and remote parties without notice such parol proof is inadmissible, and the contract implied by law stands absolute." The Court cites and approves *Hill v. Shields, supra, Davidson v. Powell, supra, Mendenhall v. Davis, supra;* and admitting a conflict in the decisions of other courts, it states that here the matter has been settled and closed by numerous decisions. It then cites *Bruce v. Wright,* 10 N. Y., 548, and refers to it in the following language: "It was there held that in an action against any indorser by his immediate indorsee it is a good defense that there was a verbal agreement at the time of the indorsement that the indorsee should not sue the indorsee, and that 'the contract between the two consists partly in the written indorsement, partly in the delivery of the bill to the indorsee, and partly in the actual understanding and intention with which the delivery was made, and that the intention of the parties may be gathered from the words of the parties, either spoken or written."

In commenting upon the very instructive case of *Baxter Natl. Bank v. Talbot,* 13 L. R. A. (Mass.), p. 52, the learned annotator says: "While it is elementary law that parol evidence is incompetent to vary the terms of a written instrument, still it is equally well settled that, as between the original parties to commercial paper, such proof is admissible as will have a tendency to establish the character in which an indorser in blank intended that he should be bound; and proof of this intention will countervail the *prima facie* presumptions which the law indulges with reference to the paper," citing *Riley v. Gerrish,* 9 Cush., 104; *Sylvester v. Downer,* 20 Vt., 355; *Owings v. Baker,* 54 Md., 82; *Nurre v. Chittenden,* 56 Ind., 465; *Pierse v. Irvine,* 1 Minn., 369; *Strong v. Riker,* 16 Vt., 555; *Quinn v. Sterne,* 26 Ga., 224; *Good v. Martin,* 95 U. S., at p. 95 (24 L. Ed., 343). In the last case cited (*Good v. Martin,* 95 U. S., 90), *Justice Clifford* quotes with approval this passage from Story Prom. Notes, sec. 479: "Judge Story says that the interpretation ought to be just such as carries into effect the true intention of the parties, which may be made out by parol proof of the facts and circumstances which took place at the time of the transaction. If the party intended at the time to be bound only as guarantor of the maker, he shall not be an original promisor; and if he intended to be liable only as a second in-

dorser, he shall never be held to the payee as first indorser." It is said in Parson on Bills and Notes, sec. 520: "In a suit between the original parties it is considered that the blank name of the indorser means nothing of itself, but its purpose must be shown, *aliunde.*" And in *Fullerton v. Hill,* 18 L. R. A. (Kan.), at p. 36, it is held, in regard to the liability upon a blank indorsement, that "parol evidence is received to rebut the presumption (arising from the indorsement being in blank), and to show what liability it was intended (by the parties) he should assume, and what relation he should sustain to the paper." The opinion in that case is a well considered one, and in the notes to it many cases are cited that support the text. In order to show that the great weight of authority favors this view, we add the following cases: *Johnson v. Schnabaum,* 17 L. R. S. (N. S.), 838; *Pike v. Sheil,* 1 M. and M., 299 (*Ld. Tenterden*); *Riley v. Gerrish,* 9 Cush., 104; *Collett v. Wright,* 1 Wright (Ohio), 80; *Honck v. Graham,* 106 Ind., 198; *Drummond v. Yager,* 10 Ill. App., 382, citing our cases; *Bank v. Crabtree,* 86 Iowa, 731; *Forepaugh v. Delaware,* 128 Pa. St., 217; *Tankersley v. Graham,* 8 Ala., 247; *Roads v. Webb,* 91 Me., 414; *Taylor v. French,* 2 Lea (Tenn.), 257; *Goodrich v. Stanton,* 71 Conn., 419; *Hirsch v. Kaufman,* 81 Atl. Rep. (R. I.), 66; *Chapze v. Young,* 87 Ky., 480; *True v. Bullard,* 45 Neb., 412; *Doll v. Getchmann,* Anno. Cases, 1913, A-882, and notes; 2 Randolph Com. Paper, sec. 778.

*Moffett v. Maness,* 102 N. C., 457, is relied on by plaintiffs, but the principle there announced has no application, and *Justice Shepherd,* who wrote the opinion in that case, said, in the later case of *Southerland v. Fremont,* 107 N. C., 570: "It is well settled that the agreement upon which the indorser of another's obligation signed, and the liability which he intended to assume, may (at least between the original parties or those parties and holders with notice) be shown by parol evidence, and he will be held only according to such agreement and intention."

On the same theory that parol evidence is admissible as between the first parties to the blank indorsement, it is also applicable as against subsequent holders with notice. 8 Cyc., 266; *Davidson v. Powell, supra.* An assignee, under a general assignment, acquires the property of his assignor, subject to all equities against him. 4 Cyc., 219; *Wallace v. Cohen,* 111 N. C., 103; *Carpenter v. Duke,* 144 N. C., 291. While such a trustee is a purchaser for value under 13 and 27 Eliz. (Revisal 1905, secs. 960, 961), "he takes the property subject to any equity, or *other right,* that attached to the same in the hands of the debtor," as said by *Justice Shepherd* in *Wallace v. Cohen, supra.* See, also, *Potts v. Blackwell,* 56 N. C., 449; *Small v. Small,* 74 N. C., 16; *Day v. Day,* 84 N. C., 408; *Brem v. Lockhart,* 93 N. C., 191, and *Southerland v. Fremont,* 107 N. C., 565.

It may be added that plaintiffs acquired the notes by the assignment to them, after their maturity, and therefore, in law, with notice of all equities and other rights of the indorser, Everett, and consequently, in law, took subject to them. *Causey v. Snow,* 122 N. C., 326; *Bank v. Loughran,* 126 N. C., 814; *Taylor v. Lauer,* 127 N. C., 157; *Brooks v. Sullivan,* 129 N. C., 190. So that plaintiffs, as trustees of Mr. Farthing, are bound by the agreement between defendant and him to the same extent as he was himself.

What, then, was this agreement? It is true, as argued by defendant's counsel, that the taking of collateral security does not suspend the right of action upon the principal debt, in the absence of any stipulation to that effect. Jones on Collateral Security, sec. 590. But that is not the question, by any means, as the agreement did not consist merely in the transfer of collaterals. It was distinctly understood and *agreed* that Mr. Farthing would not look to Mr. Everett for payment until he had *exhausted* the Annin estate. This was a valid agreement, and Mr. Farthing is bound by it, and his trustees as well. It bears a close resemblance to a guaranty of collection. We said in *Cowan v. Roberts,* 134 N. C., at p. 418: "A guaranty is a promise to answer for the payment of some debt, or the performance of some duty, in case of the failure of another person who is himself in the first instance liable to such payment or performance. *Carpenter v. Wall,* 20 N. C., 144. There is a well defined distinction between a guaranty of payment and a guaranty for the collection of a debt, the former being an absolute promise to pay the debt at maturity, if not paid by the principal debtor, when the guarantee may bring an action at once against the guarantor, and the latter being a promise to pay the debt upon the condition that the guarantee diligently prosecuted the principal debtor for the recovery of the debt, without success. *Jones v. Ashford,* 79 N. C., 172; *Jenkins v. Wilkinson,* 107 N. C., 707; 22 Am. St., 172." See, also, *Mudge v. Varner,* 146 N. C., 147. A surety undertakes primarily to pay if the debtor does not; an indorser undertakes to do the same thing, after due notice of dishonor, while a guarantor undertakes to pay if the debtor *cannot.* Randolph Com. Paper (2 Ed.), sec. 849, note 2; *Rouse v. Wooten,* 140 N. C., 557. The distinction may be further illustrated by the statement that a surety is considered as a maker of the note; a guarantor is never a maker. The surety's promise is to pay a debt, which becomes his own, as between him and the creditor, when the debtor fails to pay it, and he may be sued upon it as soon as it is due and dishonored. 2 Parsons Bills and Notes (Ed. 1871), at page 118. The contract of Mr. Everett, is, therefore, analogous to a guaranty of collection, as we have said, and though a party to the note and the indorsement, he nevertheless has contracted, as does such a guarantor, that he will pay, not if the Annin estate does

not, but if it *cannot,* or not until it is first exhausted, and to the extent only that it does not pay, after being made to pay whatever it can. That this parol agreement is valid, see also *Breese v. Crumpton,* 121 N. C., 122.

The cases relied on by plaintiffs, holding that a creditor having collateral security for his note may, notwithstanding this fact, sue the debtor without first resorting to the collateral and exhausting it (Jones on Collateral Security, sec. 686; *Silvey v. Axley,* 118 N. C., 959), are clearly not in point, because here the indorser has not only deposited the collateral, but required a further agreement that his indorsee should not proceed against him until it is exhausted; nor are the cases of *Barnard v. Martin,* 112 N. C., 754, and *Hinsdale v. Jerman,* 115 N. C., 152, as it was found in those cases that the collateral had become worthless and the creditor "was not required to do so vain a thing as to seek recovery from an insolvent person, who was liable primarily for the debt, or to enforce payment out of valueless and unsalable stock." Nor is the doctrine as to extension of time, where there is no consideration therefor, for payment, applicable to the facts of this case. Here the time was as definitely fixed as was practicable, they not knowing exactly when the estate would be settled, and the stipulation for the exhaustion of the Annin estate was founded upon a sufficient consideration, it being the same one which supported the entire contract of indorsement and its several parts, the promises being mutual and reciprocal. Mr. Farthing is presumed to have known what he was doing, being *sui juris,* and able to take care of himself; the parties standing "at arms' length." He thought he was getting a good investment for his surplus money, and it may yet turn out to be so. The agreement was a lawful one, and there is no reason why he should not be bound by it. The ruling below would imply that the contract was thought to impose upon Mr. Everett the duty of exhausting the Annin estate, whereas it is plainly stated that Mr. Farthing must assume that burden. Mr. Everett promised to employ and pay attorneys to assist in the matter, and he has done so. He has performed fully his part of the contract, and it is now incumbent upon his indorsee to do his part, by either exhausting the Annin estate and realizing what he can by law, or by showing that the estate is insolvent. All that appears is that "the end of the settlement of that estate is not in sight"; but this may be due to a lack of diligence on his part, and is not to be imputed to Mr. Everett as the consequence of any default by him. If it would be futile to proceed further against the estate because of its insolvency, the plaintiffs should have shown it, as the burden was upon them and not upon the defendant. Plaintiffs, in their brief, state that there was no exception to the evidence or the findings of fact, but only to the conclusions of law therefrom, and this being the

167—39

case, they cannot recover, as they have not performed their assignor's part of the contract, which, as we have shown, is valid and binding. The judgment of the court was based entirely upon the wrong theory, and it had no right in law to impose terms upon defendant and require him to exhaust the Annin estate by a fixed time, as the agreement authorizes no such requirement of him.

What defendant said as to the time within which the estate could be settled is not material, as there is no allegation or contention that there was any false and fraudulent representation. It was merely the expression of his opinion or "expectation," and it may have been a correct one, if proper diligence had been used in prosecuting the case against the estate. He is not responsible for the delay. Besides, the court had proceeded upon the theory that the contract is valid, by allowing him more time for the settlement, to which he would not be entitled if there had been any fraud or other equitable ground upon which to set it aside.

This view of the case is not only in accordance with good law, but good morals and manifest justice. When Mr. Farthing accepted the notes from Mr. Everett, he did so with an express agreement, as found by the referee. That agreement was definite and binding, towit, that Everett should be ultimately responsible if there was failure on the part of the Moores to pay, and on the part of the estate of John Annin to make good the liability. He agreed to bear the expenses of suing them, and has done so. It is now found as a fact that the estate of John Annin has not been wound up, and of course has not been exhausted. It is not even found as a fact that it is insolvent, and we were told on the argument that, as a matter of fact, it is not. Then why should the terms of the agreement entered into between Mr. Everett and Mr. Farthing be varied by the court in order to accelerate the time for payment by the defendant? If Farthing had sued the defendant Everett upon these notes, and this agreement had been shown, the court would not have sustained his action.

It must be declared that there was error, and the judgment will be reversed and the action dismissed.

Reversed.